## GEORGE W. LASHUS, RESPONDENT, *v.* THOMAS C. CHAMBERLAIN, APPELLANT.

MEASURE OF DAMAGES ON BREACH OF CONTRACT.—In suit at law to recover damages for breach of contract whereby defendant bound himself "not to engage in hotel business within the limits of Ogden City" during the time plaintiff was proprietor of the Chamberlain House, in said Ogden City, under that name and style, as part of the consideration for the purchase of the hotel, evidence of the difference in the value of the property, with the contract in force and with it broken is inadmissible, the diversion of business and loss of profits being the true measure of damages.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial.

*Messrs. Sutherland & McBride* and *Mr. James N. Kimball,* for appellants.

Court erred in overruling defendant's objection, because such damages are special and must be alleged: *Nunan* v. *San Francisco,* 38 Cal., 689; *Huser* v. *Loomis,* 47 Mich., 16; *Bracket* v. *Edgerton,* 14 Minn., 174, 189; *Taylor* v. *Monroe,* 43 Conn., 36; *Low* v. *Archer,* 12 N. Y., 277, 282.

The ruling was erroneous, because the supposed depreciation was not a proximate consequence of the breach.

No party is liable on contract for such secondary and remote consequences: *Batchilder* v. *Sturges,* 3 Cush., 201, 205; Wood's Mayne on Damages, 14, 15, and notes; *Hamilton* v. *McPherson,* 28 N. Y., 72; *Hadley* v. *Baxendale,* 9 Exch., 341; *Smeed* v. *Ford,* Sedg. L. Cas., 275; S. C., 1 El. & El., 682; 2 Kent's Com., 625, note; *Brayton* v. *Chase,* 3 Wis., 456; *Academy of Music* v. *Hacket,* 2 Holt., 217; *Griffith* v. *Culver,* 16 N. Y., 494.

In case of the breach of a continuing contract, the contract is not entirely turned into a mere chose in action. Though the breach be of a continuous nature, whether of neglect or an affirmative act, a succession of actions must

be brought to obtain full compensation. In each action damages will be computed only up to the date when it was brought: *Crain* v. *Beach*, 2 N. Y., 86; *Powen* v. *Wan*, 4 Pick., 106; *Pierce* v. *Woodward*, 6 Ib., 206; *Bleeker* v. *Smith*, 13 Wend., 530; *Phelps* v. *New Haven*, 16 Co. 43 Conn., 453; *Keeth* v. *Kenkster*, 9 Bush., 383; *Vighte* v. *Hougland*, 20 N. J. L., 240; *Mahon* v. *N. Y. Cent. R. R. Co.*, 24 N. Y., 658; *Phillips* v. *Ferry*, 3 Keyes, 313; *Heyden* v. *Albee*, 20 Minn., 159; *Thompson* v. *Gibon*, 7 M. & W., 405; *Beckwith* v. *Griswold*, 29 Barb., 291; *Cole* v. *Sprowl*, 35 Neb., 161; *Hudson* v. *Nicholson*, 5 M. & W., 437; *Blunt* v. *McCormick*, 3 Denio., 283; *Cumberland, etc., Corps* v. *Hutchings Co.*, 65 Me.; *Thayer* v. *Brooks*, 17 Ohio, 489; *Lowith* v. *Smith*, 12 M. & W., 582.

*Mr. P. H. Emerson*, for the respondent.

ZANE, C. J.:

This case comes to this court on the defendant's appeal from the judgment against him in the first district court, and from the order denying a new trial. The action was brought to recover damages for the defendant's violation of an agreement made between the parties on the thirteenth of August, 1881, by which he bound himself in these words: That "he will not engage in hotel business within the limits of Ogden City, Utah, during the time the said Lashus is proprietor of the Chamberlin House, in said City of Ogden, under that name and style." On the same day, and as part of the same transaction, as alleged, the defendant conveyed to the plaintiff the hotel mentioned for the consideration of $11,000. The complaint was filed August 5, 1885. The breach and damages are stated thus: "That on or about the first day of September, 1882, said defendant, acting by himself and in connection with others, did erect and furnish in said City of Ogden, and within one square of said original Chamberlin House, a large and commodious hotel building, and has continuously ever since conducted the same as a hotel, and therein lodged, entertained, and fed customers and travelers, and advertised the same, and solicited custom and patronage therefor at the

trains, depot, and other places in and about said City of
Ogden, and thereby diverted and drew away from plaintiff,
guests, customers, and patronage that would otherwise
have come to plaintiff's hotel; that thereby, and by rea-
son of the premises, plaintiff has been greatly injured and
damaged, to-wit, in the sum of ten thousand dollars." The
answer alleges that the agreement was separate from the
transaction of the sale and purchase of the hotel, and with-
out consideration; denies the alleged diversion of guests,
customers, or patronage from the plaintiff's hotel; and
denies the alleged injury therefrom.

As averred, the plaintiff was damaged by the diversion
from his hotel of patronage that would otherwise have
come to it. The damages consisted in the loss of the profits
of the patronage, not in the depreciation of the value of
the real estate and other property. The damage to the
hotel business was the natural and immediate consequence
of the breach. The depreciation of the value of the tangi-
ble property was a consequence of the injury and damage
to the business. The plaintiff should have claimed special
damages in his complaint, and should have set up the
special fact that authorized their recovery if he wished to
make such a demand.

On the trial of the case before the court and jury, the
witness, G. S. Erb, an hotel keeper, was asked by plaintiff
to state, in his opinion, the difference in the value of the
property with the contract in force and with it broken.
To this question the counsel for the defendant objected,
on the ground that it was immaterial and irrelevant.
The court overruled the objection. The witness then an-
swered that he would say that there was a difference of at
least $5,000 in the value of the property. To similar ques-
tions by the same party the plaintiff and three other wit-
nesses answered, against the objection of the defendant,
substantially to the same effect. The lowest placed the dif-
ference at 40 and the highest at 75 per cent. of the pur-
chase price. The question to each witness was objected to
by the defendant, but was overruled by the court, and ex-
ception was taken. When the question was propounded to
one of the witnesses, the objection was on the ground that

it was incompetent, as well as irrelevant and immaterial. The ruling of the court, in so permitting these questions to be asked and answered, the defendant assigns as error; and the question presented to us is, was it competent to show, by the opinion of witnesses, the difference in the value of the hotel and other property purchased with the contract sued on in force and with it broken? The agreement prohibited the defendant, within the limits named, from the hotel business during the time plaintiff should be proprietor of the Chamberlin House, under that name. The breach occurred about one year after it was made. How long defendant would continue the business depended on his will; it might be for a short time, or continue as long as plaintiff should keep the hotel purchased by him under the Chamberlin name. The plaintiff might quit keeping the house on any day; he might continue during his natural life; his death might occur at any minute. In either event, the defendant's obligation with respect to the future would instantly cease. Plaintiff could not transfer his good-will by any means. The defendant agreed that plaintiff should have the benefit of his good-will for an indefinite term. The period was indefinite, because its duration depended on contingencies that could not be known. Its prospective value could not be ascertained, because the term of its enjoyment could not be known. The value of the good-will with respect to the future must have been conjectural. An opinion as to the value of the use of the name, with the good-will, in connection with the hotel, for a given term, would be heard upon more reliable *data*, and these *data* would be more reliable if the term had expired, because the conditions and circumstances attending it and affecting its value could then be seen and understood. By what means can a witness ascertain the definite effect of the good-will on the price or value of the real estate when the term of its enjoyment is so uncertain? Such an opinion must be imaginary, conjectural, and speculative in the extreme. It is not like the benefit of a covenant running with the land accompanying it forever. If the advantages from the absence of another hotel kept by Chamberlin

had been secured by the agreement, so that they could be passed by plaintiff, with the realty, to the assignee, lessee, or grantee, its effect upon the market value of the realty could be better estimated.

Various rules are found in the text-books for estimating damages; and their application has been illustrated by the courts in numerous decisions in cases varying in their facts, but we have not been referred to or found any case entirely analogous to this. "As a general rule, the primary and immediate result of the breach of contract can alone be looked to." "The damages which may be recovered are such as naturally and ordinarily flow from the non-performance. They must be proximate and certain, or capable of certain ascertainment, and not remote, speculative, and contingent:" Wood's Mayne, Dam. sections 12, 13, and notes.

The breach of the contract by defendant was in opening and keeping the new house, and the primary and immediate result was the diversion of patronage from plaintiff's hotel, and thereby damage to him in the sum of $10,000, as alleged. The effect on the value of the hotel was produced by the diversion of patronage, and the loss in business or profits. Had there been no diversion of customers and loss of profits in the hotel business, there would have been no depreciation in the value of the hotel from the breach complained of. The diversion and loss intervened between the breach in opening the new house by Chamberlin and the depreciation in the value of the old hotel of Larkins. The first link in the connection is between the breach and loss of profits; the second, between that loss and the depreciation of the value of the hotel. One is primary, the other secondary; one immediate, the other mediate; and, as we have already seen, the damages from depreciation in the value of the real estate is not certain, or capable of certain ascertainment. They are largely speculative and contingent.

We are of the opinion that the plaintiff may prove any breach of the contract, and the continuation of the violation thereof to the time of the institution of the suit, and the loss in plaintiff's hotel business occasioned

thereby, both before and after the commencement of the suit. Any legitimate evidence tending to prove or disprove such damage may be given. The plaintiff should not be required to name such particular person who may have been induced to withhold his patronage, and to give it to the defendant—any diminution of receipts to plaintiff after the opening of the new house, and any diversion of patronage thereto; the relative situation of the houses; the extent of business done by each, and any competent fact or circumstance which may afford an inference of damage to plaintiff's business from defendant's breach. If the law does not furnish the plaintiff an adequate remedy for the injury, he may resort to equity, and enjoin the defendant from a further continuance of his business in violation of the agreement.

The case of *Burckhardt* v. *Burckhardt*, 42 Ohio St., 474, is relied upon by plaintiff as an authority in this case. The parties had been doing business under the firm name of Burckhardt & Co. for more than 20 years. Their line of business consisted chiefly of the sale of carbon oils, including all the products of petroleum, the manufacture and sale of lard oil, stearine, and the sale of paraffin wax, including a commission business. The business was a large and profitable one of long standing. Frederick became the purchaser of the real estate and personal property, together with the good-will of the business, and the exclusive use of the firm name. The good-will and use of the firm name passed with the real estate and other tangible property. There was no limitation. The purchaser had the right to use both, and to transfer them with the realty and business without limitation. The action was for a breach of such a contract. The case is not analogous to the one in hand, though like it in some respects. The court held that the opinions of witnesses as to the value of the property with and without the good-will and trade-mark was competent evidence, and might, in the absence of more specific proof, be taken as the measure of damages. The case goes further in the direction of plaintiff's position than any other to which our attention has been directed. It appears to stand alone.

The case of *Batchelder* v. *Sturgis*, 3 Cush., 201, was an action for a breach of covenant against incumbrance contained in a deed of conveyance. The estate was found to be incumbered by a lease which had about two years to run after the sale. The breach consisted in this: The trial court permitted evidence to be given to the jury that the plaintiff bought the estate for the purpose of sale, and also evidence, consisting of the opinion of persons, as to the effect of the lease upon the sale of the estate. In this the supreme court of Massachusetts held there was error. The court used the following language in its opinion: "Further, the effect of this lease upon the sale of the estate, which appears to be the ground on which the damages were assessed, does not appear to the court to be the true rule of damages in such a case. What effect the lease would have upon the sale must, in its very nature, be imaginary, and can be supported only by speculative opinions and conjectures; and, of course, in this case, the effect of the lease on the sale was shown only by the conjectural opinions of witnesses. This is quite too loose and uncertain a mode of estimating damages." The effect of the lease upon the value of the estate could have been ascertained with greater certainty than the effect of the breach of the contract declared on in the case in hand.

Other cases are referred to by counsel, but they do not appear to be so in point as to require a particular consideration of them in this opinion.

We hold that the court erred in permitting the questions as to the value of the property with the contract in force and with it broken to be asked and answered, and also in charging the jury that plaintiff might show how much less than the purchase price the property was worth with it impaired by the breach of the contract. We find no other substantial error in the record.

The judgment of the court below is reversed, with costs of this appeal to be taxed against plaintiff, and the cause is remanded, with direction to the court below to grant a new trial.

HENDERSON, J., concurred.   BOREMAN, J., dissented.