Jackson *v.* Byrnes.

JACKSON *v.* BYRNES.

(*Nashville.* January 6, 1900.)

1. CONTRACT. *Not against public policy.*

A contract is not void, as being contrary to public policy, by which the seller of a livery stable and outfit obligates himself to the purchaser not to engage in the same business at the same place so long as the latter continues in the business at that place. (*Post, pp. 699, 700.*)

Cases cited: Slack *v.* Suddoth, 102 Tenn., 375.

2. DAMAGES. *Measure of.*

The measure of damages for the breach of a contract by the seller of a livery stable and outfit not to engage in business at the same place so long as his purchaser remained in that business, is not the difference in the value of the property with the good will and without the seller's competition, and the value of the property without the good will and with competition of the seller, but such actual damages and loss as the purchaser may be able to prove up to the date of the institution of the action. (*Post, pp. 700–704.*)

Cases cited: Muse *v.* Swayne, 2 Lea, 251; Leinau *v.* Smart, 11 Hum., 307; Slack *v.* Suddoth, 102 Tenn., 375; Bank *v.* Bank, 7 Lea, 420.

3. INJUNCTION. *Is the effective remedy, when.*

Injunction is the effective remedy for breach of a contract by which one party agrees not to engage in business in competition with another at a particular place for an unlimited time, where the contract does not fix any amount that shall be recoverable for its breach. (*Post, p. 703.*)

FROM ROBERTSON.

Appeal in error from Circuit Court of Robertson County. A. H. MUNFORD, J.

Jackson v. Byrnes.

A. E. GARNER and L. T. COBBS for defendant.

J. W. BYRNES and R. L. PECK for plaintiffs.

WILKES, J. Jackson sold to Byrnes a livery stable and outfit for $1,500, situated in the town of Cedar Hill, Robertson County. The purchaser insists that as a part consideration for this contract, Jackson agreed that he would not engage in the same business at that place so long as he, the purchaser, continued in the business.

The contention is that he breached this agreement by letting horses and wagons to hire. The plaintiff sued for this breach, and there was a trial before the Court and a jury, and a verdict and judgment for $400, and defendant has appealed and assigned errors.

As the first assignment of error, it is said that such contract is contrary to public policy, and should not be enforced.

In this connection it is said there is a variance between the allegation in the declaration and the evidence; that the declaration alleges that the defendant was obligated not to enter into the business at Cedar Hill, while the evidence was to the effect that he would not enter into the business anywhere. We think this contention not well made, and taking the evidence as a whole, it clearly appears that Cedar Hill was the place of the location of the business, and that the contract did not relate to doing business anywhere else.

Jackson *v.* Byrnes.

We do not think such an agreement is so op-
posed to public policy as to be void. Such con-
tracts have been upheld and enforced by the Courts.
Beach on Modern Law of Contracts, Vol. 2, Sec.
1569; Clark on Contracts, pages 448, 449..

It is well to remark in this ·connection that
the case is not simply one of a sale of good
will.. A sale merely of good will does not, of
itself, imply a contract on the part of the ven-
dor to not engage again in a similar business.

Lord Eldon ˙defined "good will" as simply a
possibility that the old customers would resort to
the old place. But this definition is, perhaps, too
restricted. *Slack* v. *Suddoth*, 102 Tenn., 375.

Suffice it to say that an obligation not to
enter into a similar business will not be implied
from a mere sale and transfer of good will, and
the present is not such a case, but one where
there was an express parol agreement collateral with
the conveyance of the property, but not embodied
in it, not to enter into competition in the same
business and territory as the plaintiff did business
in so long as he continued in it.

The next assignment is as to the measure of
damages. The Court charged the jury that the
proper measure was the difference in value of the
property with the good will and without compe-
tition of the defendant, and the value of the
property without the good. will and with the com·
petition of the defendant. In the same connection

the trial Judge instructed the jury that they must look to the evidence and see if there was any competition, and its character and extent, whether full or slight, and the extent to which the property was depreciated from the purchase price as agreed on and as shown by the proof, as the damages plaintiff would be entitled to recover. We do not understand the trial Judge to mean that a single act of competition would be a breach of the contract, and he did not intend to lay down two rules, but only to instruct the jury as to how they should arrive at the difference in value with and without the competition. But it is said the rule itself is erroneous, and that the proper rule is that the plaintiff can only recover such actual damages and loss as he may be able to show up to the bringing of the suit. Authorities are cited upon both theories. One difficulty in the case arises from the fact that the contract is virtually unlimited as to time—that is, so long as plaintiff remained in the business defendant was not to oppose him, and it would be impossible to say how long he would continue in business.

In the case of *Muse* v. *Swayne,* 2 Lea, 251, Muse sold a stock of liquors to Swayne, and agreed to not enter into competition or rent his house for that purpose for ten months, and gave a bond for $500 to secure the performance of the contract. The Court held that the penalty of the bond must be treated as liquidated damages,

upon the ground that it would be difficult if not impossible to ascertain the damages actually sustained, and the sum specified in the bond must be treated as damages if not unconscionable and unreasonable, as otherwise no measure of damages could be fixed upon.

In the case of *Leinau* v. *Smart*, 11 Hum., 307, the defendant sold the plaintiff a tavern, garden, stables, etc., at McMinnville, called the Cain House. At the time the defendant owned another hotel at the same place called the Jewell House, and it was one of the terms of the contract that this house was to be closed, though it was not incorporated in the deed.

The defendant breached the contract by leasing the Jewell House to another party for three years, and suit was brought. But two questions appear to have been contested in the case. The first was whether the agreement not to run the Jewell House could be set up by parol when it was not incorporated in the deed, and the other was whether the contract was within the statute of frauds because not to be performed in a year.

The Court held the evidence competent, and that the statute did not apply. There was a verdict and judgment in the case for $125, but the rule and measure of damages was not considered and passed on by the Court in any way, except so far as is implied by the affirmance.

The difficulty in arriving at a proper measure

Jackson *v.* Byrnes.

of damages, and in excluding elements which are purely speculative, is forcibly illustrated in the case of *Slack* v. *Suddoth*, 102 Tenn., 375, and *E. Tenn. Nat. Bank* v. *First Nat. Bank*, 7 Lea, 420.

These appear to be the cases in our books bearing upon the question of the measure of . damages.

The case which more directly supports the plaintiff's contention, is that of *Buckhardt* v. *Buckhardt,* 42 Ohio State, 474, and more or less in accord with it are the cases of *Jenkins* v. *Temple,* 39 Ga., 655; *Rawson* v. *Pratt et al.,* 91 Ind., 9; *Union Society* v. *Harwood,* 126 Ind., 440.

On the other hand we are cited to the cases of *Lashees* v. *Chamberlain,* 5 Utah, 142, which criticizes the 42 Ohio State case. Also the case of *Howard* v. *Taylor,* 90 Ala., 241, and these cases, we are of opinion, lay down the most correct rule.

The Court is of opinion that in a case like the present, . and under the facts, the plaintiff's proper remedy is to enjoin the defendant from engaging in the competitive business contrary to the agreement.

This would, so far as results go, be to specifically enforce the contract. If, however, the plaintiff resort to an action for damages for a breach, only such actual damages as have been sustained

up to the bringing of the suit should be recovered. If the competition is continued, injunction may also be resorted to.

It is practically impossible to determine the difference in value of the property or contract with and without the proviso against competition. No witness could know, and the plaintiff himself could not state how long he would continue in business, and, in the absence of this fact, there could be no tangible basis for an estimate of damages.

No sum is fixed in this case as liquidated damages, and there is no allegation that any specific amount was given for this prohibition, but the statement is simply to the effect that it was a part of the consideration.

For these reasons we are of opinion there is error in the judgment of the Court below, and it is reversed and the cause remanded. Appellee will pay costs of appeal.