George P. Scotton, George C. Scotton and Lyman J. Scotton, trading as George P. Scotton & Sons, and also trading as Smyrna Nash Motors Company,

*vs.*

George D. Wright and George Harvey Wright, trading as George D. Wright and Son.

*Kent, Nov. 7, 1923.*

While the jury's verdict, on an issue sent by the Court of Chancery to the Superior Court for trial, is not conclusive on the Chancellor, who may frame and submit another issue for trial before another jury, or disregard the verdict and make his own finding, it is entitled to great weight, especially when the fact is so difficult of precise ascertainment as the damage from a breach of covenant not to engage in trade.

While the Chancellor, in passing on a motion for new trial on the ground that the verdict on an issue submitted by him for trial before a jury is against the evidence, may consider its weight, the motion will not be granted, unless the verdict is clearly against the weight of the evidence.

A verdict for $3,000 damages for breach of covenant not to engage in trade in competition with complainants *held* supported by sufficient evidence, notwithstanding testimony which would have supported a larger award, and not clearly against the weight of the evidence.

Damage to the goodwill of a business by the seller's breach of a covenant not to compete with the buyers, cannot be shown by opinions of the buyers or other dealers in the same line, nor by the testimony of a real estate expert as to the value of the realty sold.

When the subject-matter of the inquiry is such as does not lie in the field of expert knowledge, and the jury are as capable of drawing conclusions from the proven facts as is a witness, the opinion of the latter should be rejected as being of no serviceable aid and therefore superfluous.

In passing on the admissibility of opinion evidence, which is a question of law for the court, it must use its reasonable discretion in determining whether the subject-matter is properly within the field of expert or special knowledge, and, if so, whether the witness is sufficiently qualified by learning or experience to speak illuminatingly with respect thereto.

A new trial will not be granted for error in rejecting or admitting evidence, if the Chancellor is satisfied that it could have had no prejudicial effect on the verdict.

Error, if any, in rejecting opinion evidence of the value of a business and the damage to the goodwill, in consequence of the seller's breach of a covenant not to compete with the buyers *held* not of such weight as to have probably influenced the jury and hence insufficient to require a new trial.

In ascertaining the damages done by the competition of defendants to the automobile business sold by them to complainants, the opinions of witnesses as to the value of an agency in the hands of the defendants to sell Ford automobiles should not be received in evidence.

Motion for a Re-reference to a Jury. Upon the granting of the injunction 13 *Del. Ch.* 214, 117 *Atl.* 131, affirmed on appeal 13 *Del. Ch.* 402, 121 *Atl.* 69), an issue was directed to be tried at the bar of the Superior Court, said issue being: "How much have the complainants been damaged by the defendants' breach of covenant?" The Superior Court duly certified the result of the trial of this issue and the complainants now make an application for a new issue. The facts pertinent to the questions raised by this motion appear in the opinion of the Chancellor. For report of proceedings at trial of issue to Superior Court, see 32 *Del. Rep.* (2 *W. W. Har.*) 192, 121 *Atl.* 180.

*William M. Hope*, and *James I. Boyce*, for the complainants.

*William H. Boyce, Arley B. Magee* and *Daniel O. Hastings*, for the defendants.

THE CHANCELLOR.    Various reasons are urged as to why the issue should be resubmitted and a new trial had.    These reasons are embraced in eleven paragraphs of the complainants' written motion.    They may, however, be classified as follows:

(1) That the verdict is against the evidence.

(2) That the Superior Court erred in rejecting certain evidence tendered by the complainants for the purpose of showing the value of the goodwill of the business which the complainants purchased from the defendants and how much the same had been impaired by the defendants' wrongful competition.

(3) That the Superior Court erred in rejecting evidence of the value of an agency to sell Ford automobiles in the town of Smyrna.

It is agreed by the solicitors representing the parties that the verdict of the jury on an issue sent by the Court of Chancery to be tried at the bar of the Superior Court, is not binding on the Chancellor; that the verdict of the jury is only advisory; and that if for any reason the verdict is not satisfying to the Chancellor's conscience, for whose enlightenment it is sought, another issue may be framed and submitted for trial to another jury, or the Chancellor may disregard the verdict already rendered and himself proceed on the evidence disclosed by the record to make a finding.    That these agreed principles are settled in the law appears from the text found in 21 *C. J.* 594, *par.* 735.    While, however, it is true that the verdict is in no wise conclusive upon the Chancellor's judgment, yet it is entitled to great weight and ought not to be lightly disregarded.    The same citation from 21 *C. J.* contains language to this effect.    This principle appears to be so well grounded in reason that I have not deemed it necessary to examine the authorities in its support.    If the fact, the truth of which the issue is designed to ascertain, is of such character as to prompt the Chancellor to invoke the aid of a jury in its ascertainment, it is not to be supposed that the judgment of the jury when obtained will be arbitrarily disregarded or even lightly considered.    If it were not so, the Chancellor would betray a lack of confidence in the jury's judgment which his action in directing the issue would hardly warrant. Especially is the jury's verdict entitled to considerable weight

when the fact is so difficult of precise ascertainment and exact measurement as the question of damage occasioned by a breach of covenant not to engage in trade. In disposing, therefore, of the application for a new trial of the issue, the result heretofore reached by the jury is not to be discarded except for reasons that satisfyingly overcome the weight to which the jury's conclusion is entitled. The three reasons advanced for a new trial will be disposed of in the order in which they are above set forth.

In the opinion filed by me when the nature of the decree to be entered was determined upon (13 *Del.· Ch.* 214, 117 *Atl.* 131) I observed that the possible damages occasioned by the breach of the covenant ranged from a nominal sum to as high as $12,000, the sum then contended for by the complainants. The jury, after a rather extensive hearing, reached the conclusion that $3,000 is a fair measure of the complainants' damage. It is now urged that the verdict finding this to be the proper amount is against the evidence. If by this it is meant that there is no evidence whatever which would justify the jury in naming this figure as the amount of damage, I am constrained to disagree with the contention. It is true that the complainants introduced testimony which if accepted by the jury at its full face value would suggest a sum larger than $3,000 as the correct measure of the damage. But the jury was not bound to accept in full the complainants' representation of the damage. Especially is this true when it is remembered that the damages were typically unliquidated in character depending for their measurement upon the extent to which the defendants' competition had taken trade away from the complainants, and that the defendants offered testimony which if believed was calculated to show that the loss of business which the complainants allege they suffered was due in large part to their own inattention and costly if not wasteful management. It is unnecessary to review the testimony adduced by the parties in support of their respective contentions in order to show the correctness of these observations. It is sufficient to say that there was evidence in the case which if accorded credit would support the jury's finding.

If, however, by their first reason the complainants mean to say that the verdict was against the weight of the evidence, then it is proper to observe the application of certain principles of law

which are pertinent to the question in hand. While in a general way it may be true that in passing upon motions for the new trial of an issue upon the ground that the verdict is against the evidence, courts of chancery will ordinarily be governed by the rules and principles applicable to motions for a new trial in suits at law, yet, inasmuch as the findings of fact in the Chancery Court must eventually be the findings of the Chancellor and such as to meet the approval of his conscience, there is sound reason to hold that in disposing of motions for a new trial the Chancellor should refuse to adhere to the strictness of view prevailing at law where the functions of triers of fact and triers of law are so ingeniously distributed between the court and the jury. When the Chancellor sends an issue to a jury it must be only because he is so perplexed by a question of fact that he desires the aid of other men's judgment in arriving at the truth with respect thereto. The framing of an issue argues the existence of difficult conflict on facts which the Chancellor desires a jury to assist him in reconciling if possible, or, if reconcilliation be impossible, to duly weigh and in the light of all available testimony to determine according as the preponderance shall indicate. Therefore while he may in passing upon a motion for a new trial because the verdict is against the evidence give consideration to where its weight lies (in contrast to courts of law in analogous cases), the case must indeed be a strong one to induce him to say that the jury, in whose ability to properly weigh the evidence he has already expressed his confidence, erred in performing its task. In 21 *C. J.* 598, *par.* 738, it is said that a court of equity "will not grant a new trial merely because in weighing the evidence the court would have reached a different result." *Clark v. Keene First Cong. Soc.*, 45 *N. H.* 331, and *Jenkins v. Morris*, 14 *Ch. Div.* 674, are cited in support of this text. The text further proceeds, however, to state what appears to me to be the sounder rule, viz., that a "new trial may be granted, however, where the verdict of the jury is clearly against the weight of the evidence." To this effect is the language of the court in *Brooks, et al., v. Bicknell, et al.*, 4 *McLean*, 70, *Fed. Cas. No.* 1,946. After a careful reading of the record I find it impossible for me to say that the jury's verdict was clearly against the weight of the evidence. The jury had before it figures showing the volume of

business done by the complainants since the purchase of the defendants' place of business covering the period before the defendants started their competition, during the continuance of the competition and since its termination by the injunction. It also had before it the figures showing the volume of business done by the defendants at the stand which they sold to the complainants, and the figures showing the volume of business done at the new and competing stand. The jury were thus enabled to make a comparative study of the business purchased by the complainants and the competing business conducted by the defendants, and to draw therefrom a conclusion as to the extent to which the competition had encroached upon the complainants. These figures of gross business were elucidated by evidence dealing with items which in proper instances might be eliminated from consideration and further by evidence tending to show that the falling off of the complainants' business was in part at least due to lack of attention, inexperience and extravagant management. While there was ample room for debate concerning the legitimate inferences to be drawn from the testimony, yet it is by no means clear that the conclusion which the jury ultimately reached was against the evidence or even its preponderance. Indeed in the process of reconciling the testimony and duly appraising it, I am not persuaded that the jury was far wrong if it was so at all. This being so, I would not feel justified in pronouncing the verdict unsatisfactory and accordingly ordering a new trial.

2. The second reason advanced for a new trial is, that the Superior Court erred in rejecting evidence offered for the purpose of showing the value of the goodwill of the business which the complainants purchased from the defendants and how much the same had been impaired by the defendants' wrongful competition. The rejected evidence consisted of the proffered testimony of the complainants, two automobile dealers located in Dover which is eleven miles distant from Smyrna where the place of business of the complainants is located, and a real estate man. One of the complainants did testify without objection that the wrongful competition by the defendants had damaged the selling price of the property which the complainants had purchased from the defendants to the extent of four thousand dollars. But when objection was

made, the other complainants were not allowed to state that the goodwill of their business had been impaired, nor how much, nor were they allowed to say how much less than the purchase price of $10,000 their place of business was worth by reason of the breach of covenant by the defendants. The automobile dealers from Dover were in one form or another asked to testify as experts as to whether in their opinion the goodwill purchased by the complainants had been impaired by the defendants' competition and if so to what extent measured in dollars. The real estate expert was asked concerning the fair market value of the real estate purchased by the complainants and as to whether there had been any depreciation in its value, or in the value generally of real estate in Smyrna. There was an attempt apparently to show by this witness how much of the purchase price of $10,000 was to be attributed to the real estate and how much to the goodwill, an allocation of the sum which the parties themselves neglected or refused by their contract to make. What use the complainants intended to make of the testimony of the real estate expert I am unable to see, unless it was their purpose to follow it up by showing that since the competition had started the value of the complainants' real estate as a place of business for a garage had thereby been reduced. When objection was made to any testimony of the character above described, the objection was sustained. In the last analysis the proposition which underlay the offer of all this testimony was that it is competent to show damage to goodwill by opinion evidence. Without adverting to the collateral question of the competency or qualification of some at least of the witnesses to speak as experts with respect to the ultimate subject-matter, the Superior Court addressed its attention to the fundamental proposition and held that the alleged damage to the goodwill could not be shown by opinion evidence.

In *Wilcox's Adm'r. v. Wilmington City Railway Co.*, 2 *Pennewill*, 157, 44 *Atl.* 686, opinion evidence concerning the earning capacity of an individual was rejected. This ruling is the only one in this State, with which I am familiar, which approaches in principle the question here involved. Though the ruling in the *Wilcox Case* is not precisely in point, yet by analogy it may be argued it is; for while in that case the question was of the earning

power of an individual, here it is one of the earning power of a business which must first be known before the extent of damage to it by intervening competition can be arrived at. In *Lashus v. Chamberlain*, 5 *Utah*, 140, 13 *Pac.* 361, the court refused to allow questions as to the value of property with the contract not to compete in force and with it broken. In *Foote & Davies Co. v. Malony*, 105 *Ga.* 985, 42 *S. E.* 413, it was held that it was not permissible for a witness to state that the defendant's business was damaged in an amount of more than $500 by the breach of covenant by the plaintiff. The court appears to have based its ruling on the conception that the amount of damages was one of the questions for the jury to determine from the facts testified to by witnesses, and that a witness should not be allowed in substance to testify to the jury what its conclusion ought to be. In *Lihn v. Sigsbee*, 67 *Ill.* 75, the action was to recover damages for breach of contract not to engage in the practice of medicine. The court held it was error to have admitted testimony of physicians as to the amount of damages which the defendant's competition had occasioned. After observing that opinions of experts are always admissible touching matters in which they are especially skilled, the court proceeds to say:

"Opinions of witnesses are not competent as evidence when the inquiry is into a subject-matter, the nature of which does not require any peculiar habits or study or scientific knowledge to understand it. The opinions of the physicians were not only unnecessary to enable the jury to ascertain the damages sustained, but were highly improper. If they did not have a knowledge of the facts, the sickness and the practice performed by the defendant, an opinion was a mere guess. If they had such knowledge from a detailed statement of the facts the jury could have assessed the damages. All the facts bearing upon the question of damages should have been laid before the jury, and they would have been fully competent to fix the amount of the verdict without the aid of the opinions of others."

In the instant case the jury had before it all the available facts which were of no meager extent from which they themselves could study the effect of the competition upon the goodwill purchased by the complainants and appraise it in dollars. Opinion evidence must, if worth anything, have been founded on just such facts as were in possession of the jury.

Professor Wigmore, whose observations always merit great consideration, in speaking of one aspect of the opinion rule says:

"The true theory, then  *  *  *  is simply that of exclusion of superogatory evidence. It is not that there is any fault to find with the witness himself or the sufficiency of his sources of knowledge or the positiveness of his impressions; but simply that his testimony, otherwise unobjectionable, is not needed, is superfluous.  *  *  *  It [the rule] simply endeavors to save time and avoid confusing testimony by telling the witness: 'The tribunal is on this subject in possession of the same materials of information as yourself; thus, as you can add nothing to our materials for judgment, your further testimony is unnecessary, and merely cumbers the proceedings.'  *  *  *  We are dealing merely with a broad principle that, whenever the point is reached at which the tribunal is being told that which it is itself entirely equipped to determine without the witness' aid on this point, his testimony is superfluous and is to be dispensed with." *Wigmore on Evidence,* (2d *Ed.*) *vol.* 4, § 1918.

In the case before me some of the witnesses whose opinions were sought were automobile dealers from Dover and a real estate man. It seems very clear to me that even if their competency to speak and the sufficiency of their sources of information were freely conceded (a concession which the record will hardly justify), nevertheless their testimony must have been entirely superfluous and therefore objectionable under the theory expressed by Professor Wigmore. As to the witnesses who are complainants, though it may be assumed that the sources of their information were sufficient, yet such information as they had was before the jury and their testimony under the above theory was likewise objectionable.

On the same principle that whether offered evidence is the best evidence presents a question of law for the court (*Boyer, Adm'r., v. Broffey,* 109 *Ill. App.* 94) it would appear that a like question is presented when a tender is made of a witness' opinion. In passing upon this question the court is to be governed by the circumstances surrounding the particular situation presented. No hard and fast rule prescribing in advance the court's conduct can be laid down. With respect to many opinions, it would appear clear that their admission in evidence is to be governed largely by the discretion of the court. 22 *C. J.* 514, *par.* 601; *Chamberlayne, Modern Law of Evidence, vol.* 3, § 1834. This is most commonly manifested in those cases where the opinion is offered of one who

Scotton, et al., vs. Wright, et al.          133

Opinion.

because of his special acquaintance with some particular branch of knowledge may be said to be an expert on the subject. Here the court in the first instance must use its reasonable discretion in determining two things: First, is the subject-matter one that properly falls within the field of expert or special knowledge; and, second, if so, is the witness sufficiently qualified by learning or experience to speak illuminatingly with respect thereto? If both of these questions are answered by the court in the affirmative, then the witness' opinion is received. It may be that the facts upon which the opinion is predicated are all before the jury, as is always the case where a hypothetical question is framed. If, however, the jury are as well qualified by knowledge and experience as the witness to draw the proper inference from these facts, then the witness' opinion should be rejected. If the jury is not as well qualified as the witness, then the opinion of the specially informed and trained witness is admissible. In such cases, the test is whether or not the offered opinion is of any serviceable help to the jury in reaching a conclusion. Here, then, is a test which the proffered testimony must first successfully undergo before it can be admitted. Just as the judge must first pass upon the preliminary question of the witness' qualifications to speak, so likewise he must in the exercise of a like administrative control over the proceedings pass upon the other question of whether the opinion of the witness can be of any real aid to the jury; in other words, whether the subject-matter properly lies within the field of expert testimony. It is in this sense, I assume, in which the language of the courts is to be understood when it is said that the admission of opinion evidence is to be governed largely by the court's discretion. If the trial court exercises its discretion in an unreasonable manner it would, of course, follow that error would successfully lie against the ruling. *Fayette v. Chesterville*, 77 *Me.* 28, 52 *Am. Rep.* 741; *Hawks v. Clarlemont*, 110 *Mass.* 110. The Supreme Court of the United States in *Congress & E. Spring Co. v. Edgar*, 99 *U. S.* 645, 25 *L. Ed.* 487 observes:

"Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence [opinion]; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous."

In rejecting the opinions of witnesses in this case as to the

value of the damage done by the defendants to the goodwill pur-
chased by the complainants, I am convinced that the Superior
Court in view of the state of the testimony before it and all the
circumstances of the case disclosed thereby properly exercised its
discretion. Had the trial been before me, I would have made the
same ruling.

If, however, it be conceded that the Superior Court did err
in this regard, it does not follow that a new trial should be granted.
Even though error may have been committed in rejecting or ad-
mitting evidence, yet if the Chancellor is satisfied that such error
could have had no prejudicial effect and that the verdict so far as
such error could in any way legtimately affect it is nevertheless
right, the new trial will be denied. *Black v. Lamb*, 12 *N. J. Eq.*
108; *Thomasson v. Kennedy*, 3 *Rich. Eq.* (*S. C.*) 440; *Head v.
Head, Turner & R.* 138, 37 *Eng. Reprint*, 1049. If the rejected
opinion evidence had been received, its probative value in view of
all the other facts in the case would have been of so little weight
as not to be entitled to influence the jury. The case, therefore,
is one where if there was error in rejecting evidence, the error
was not such as to be material, for if it was admitted and allowed
only its proper weight, the result should not have been altered.
To emphasize this statement, I might say that if I could now re-
ceive for my consideration the opinions which the Superior Court
rejected, I would not accord to them enough of influence to offset
the legitimate inferences to be drawn from the other evidence in
the case for the plain reason that such opinions, if founded on less
than the proven facts, would be worthless and if founded on all
the facts in evidence would still be no more than expressions of
opinion upon the effect of all the evidence in the case, a question
which it is for the jury and later the Chancellor to pass upon, and
a question of a kind which does not require the aid of a specially
informed expert to properly answer.

Regardless, therefore, of whether there may have been tech-
nical error in the ruling referred to, it is sufficient for me to rely on
the reasons just given for refusing a new trial on the ground of
such alleged error.

3. The third and last reason advanced for granting a new
trial is that the Superior Court erred in rejecting evidence of the

value of an agency to sell Ford automobiles. I am unable to see wherein the Superior Court erred in this regard. The evidence shows that the defendants secured an agency to sell Ford automobiles in the forbidden territory. Whether the complainants would have obtained such agency in case the defendants had refrained from seeking it, was a question which the Superior Court left for the jury to determine, and if the jury found on this point in favor of the complainants they were then told that the verdict should include a sum sufficient to compensate the complainants for the loss of profits, if any, which they would have obtained therefrom. The complaint now is made that in rejecting the tendered evidence as to the value of such an agency in the town of Smyrna, the Superior Court left the jury nothing upon which to found a conclusion as to the value in case they believed the complainants had been deprived of it by the defendants' acts. The rejected evidence was in the form of opinions of witnesses as to the value of the Ford agency. Had such opinions been received, the jury ought not to have ascribed much if any importance thereto. The jury had before it the gross volume of business done by the defendants during the period of their competition and in this gross business was included the sale of Ford cars and parts. They also had testimony showing the percentage of profit on the Ford business. I do not think the complainants were injured by the rejection of opinions of witnesses as to the value of the Ford agency. Furthermore, I am by no means satisfied in my own mind that the evidence shows that the complainants would have obtained the Ford agency even if the defendants had not. At best the evidence tending to show that the complainants would have obtained it indicates only a possibility, too slight to warrant basing a finding of damages thereon. What, if any, effect the Ford agency in the hands of the defendants had in competitively taking business from the complainants was under instructions from the Superior Court left for the jury to say.

I am unable to say that the verdict rendered by the jury is so clearly against the weight of the evidence that it should be disregarded and a new trial directed. On the whole I am satisfied with the verdict and a decree will accordingly be entered.