MAX FRUMIN *v.* PHILLIP CHAZEN.*

(*Knoxville.* September Term, 1925.)

1. **GOODS WILL.** Remedy for seller's breach of contract not to complete is either by specific performance or damages for breach (Acts 1915, chapter 47).

Remedy for breach of contract not to engage in similar business as that sold is either by specific performance or action at law or chancery under Acts 1915, chapter 47, for damages for breach, but party cannot have both remedies. (*Post, pp.* 6-8.)

Acts cited and construed: Acts 1915, ch. 47.

Frumin v. Chazen.

Cases cited and approved: Jackson v. Byrnes, 54 S. W., 984; Bradford v. Furniture Co., 92 S. W., 1104; Grizzard v. Fite, 191 S. W., 969, 137 Tenn., 103.

Cases cited and distinguished: Bradshaw v. Millikin, 92 S. E., 161.

2. **ELECTION OF REMEDIES.** Representation by plaintiff that he would enjoin defendant's operation of competing business in breach of his contract causing defendant to abandon enterprise held an election to specifically enforce contract.

Where defendant was about to operate a competing business in breach of his contract not to engage in similar business as that sold plaintiff, representations by plaintiff that he would enjoin operation of business, causing defendant to abandon enterprise to his prejudice, *held* an election by plaintiff of remedy of specific performance precluding action for damages for breach of contract. (*Post, pp.* 8, 9.)

Case cited and distinguished: Miller v. Hyde, 37 N. E., 760.

3. **ESTOPPEL.**

"Equitable estoppel" is estopped *in pais*, and signifies estoppel by misrepresentation. (*Post, pp.* 9, 10.)

---

*Headnotes 1. Good Will, 28 C. J., Section 24; 2. Election of Remedies, 20 C. J., Section 24 (Anno); 3. Estoppel, 21 C. J., Section 14.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —Hon. W. B. Garvin, Chancellor.

J. L. Levine and Joe V. Williams, for Frumin.

J. L. Spurlock, Littleton & Littleton, and C. G. Martin, for Chazen.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a suit to recover $2,000, as liquidated damages, for the breach of a contract dated April 26, 1923, by which the defendant sold his interest in the partnership, as well as the good will of the business, to complainant, and agreed not to engage in a similar business in Chattanooga for a period of two years. The provision of the contract involved is as follows:

"As a further consideration, in addition to the sale of my interest in said business to Max Frumin, I, Phillip Chazen, specifically agree and bind myself that I will not engage, in Hamilton county, Tennessee, for a period of two (2) whole years following the dissolution of this partnership, in any line of business similar to the character of the consolidated Iron & Metal Company and the Chattanooga Automobile Wrecking House, directly or indirectly, by ownership or employment. It being the purpose to afford to the said Max Frumin the sole right to the good will of this business in this county for a period of two (2) years following this agreement. It is specifically agreed that note # 2 for $1,000 due May 1, 1924, and note # 3 for $1,000 due May 1, 1925, shall be and become void and uncollectible in event Phillip Chazen violates the provisions of this paragraph."

It is stipulated that the facts found by the chancellor, in his opinion, are correct. The chancellor detailed three transactions engaged in by the defendant in violation of his contract, and said:

"(2) The foregoing transactions took place within about two or three weeks after the dissolution. Chazen

then left Chattanooga, going first to Memphis and later to Knoxville, in which latter place he obtained entrance into a partnership engaged in the same line of business which he and Frumin had been engaged in. This concern received and filled orders for materials not only from customers in Knoxville but in the surrounding counties. In the same way the business of Chazen and Frumin had extended beyond bounds of Hamilton county. The Knoxville partnership received and filled orders for materials from two concerns in Chattanooga. It does not appear that they purchased any materials in Hamilton county, or that they ever came to Hamilton county and solicited orders. All that appears is that when orders for materials were received from the two Chattanooga concerns, they were accepted and filled in Knoxville. Chazen did not thereby engage in business in Hamilton county.

"(3)   Chazen was desirous to dispose of the last two notes which Frumin had given him and had an opportunity to. sell them to Weber, if Frumin would agree to pay them as they came due. Chazen sought to get such an agreement from Frumin but Frumin declined to make the agreement or. to say what his attitude would be in regard to them. In this situation, in the fall of 1923, Chazen agreed upon a partnership with one Sovelove and one Coplan to establish a competing business in Chattanooga. They rented the place directly across the place from Frumin and brought a truck load of materials from Knoxville to put in it. Thereupon, it is agreed upon the record that the attorney for Frumin with his authority notified the attorney for Chazen that if the latter opened up said competitive business he would apply for and obtain an in-

junction enjoining him from operating said business. In consequence of this note, Chazen dissolved the partnership agreement with Sovelove and Coplan, and the business was never opened up. An attempt is made to show that the truck load of materials was disposed of in Chattanooga, but the proof is that it was taken back to Knoxville. No business was done by this partnership, and Chazen has faithfully remained out of business in Hamilton county ever since. In a settlement a day or so later between Chazen and Coplan of matters growing out of this abortive partnership, Frumin's attorney was also Coplan's attorney, and exhibited to Chazen the bill he had prepared to enjoin the said business, thereby corroborating the notice he had previously given of Frumin's intention. Frumin's insistence is also shown by the bill in this cause. He prays for an injunction 'in the alternative' and reserves the right to file a supplemental bill for an injunction should Chazen again engage in this business in Chattanooga within the two years.''

On the foregoing facts the chancellor held that, upon the breach of the contract, Frumin had a choice of two remedies, viz. an action for damages for the breach of the contract, or an action for specific performance by a bill in equity enjoining the defendant from operating a competitive business, but that he was not entitled to both remedies. He then held that the conduct of complainant, as detailed above, constituted an effectual election to restrain the defendant from conducting a similar business in Chattanooga. In disposing of this question the chancellor said:

"Upon a violation of the agreement by Chazen, Fru-min had an election, viz. either to let Chazen go on and then claim his liquidated damages or to insist upon his quitting, and if necessary, enforce it by injunction. He was clearly not entitled to both remedies. On the argument the case of *Jackson* v. *Byrnes,* 54 S. W., 984, 103 Tenn., 698, was cited to show that he is entitled to both remedies, but that case merely pointed out incidentally that there could be a recovery for the actual damages for a partial breach and an injunction against a further breach. That was far from holding that the obligee could recover liquidated damages for an entire breach and maintain a suit for injunction at the same time.''

The chancellor further held that the complainant was entitled to recover such damage as he had sustained on account of the three transactions referred to above.

As a result of a reference, it was finally decreed that complainant had sustained no damage on this account, and no question is made as to the correctness of that decree.

The chancellor was clearly correct in his conclusions, and his decree will be affirmed.

Under practically all of the authorities this contract is of that character in which the remedy for its breach is either a bill in equity for a specific performance, or an action at law (or in chancery since the act of 1915 [Public Acts 1915, p. 133, chapter 47]) for damages for its breach, and it is elemental law that the party wronged cannot have the contract specifically performed, and at the same time recover damages for its breach, with the exception that, probably by the weight of authority, he

can recover damages accrued at the time of the institution of injunction proceedings. This question, however, is not involved here since it has been decreed that complainant was not damaged.

The decisions of this court clearly recognize the doctrine of election in such cases. *Jackson* v. *Byrnes,* 54 S. W., 984, 103 Tenn., 698; *Bradford* v. *Furniture Co.,* 92 S. W., 1104, 115 Tenn., 632, 9 L. R. A. (N. S.), 979; *Grizzard* v. *Fite,* 191 S. W., 969, 137 Tenn., 103, L. R. A., 1917D, 652.

A case very much in point, and in which the authorities are reviewed, is that of *Bradshaw* v. *Millikin,* 92 S. E., 161, 173 N. C., 432, L. R. A., 1917E, 880.

In that case the defendant sold complainant his interest in a barber business, and bound himself not to compete in this business with complainant in a certain community for a period of two years, and further agreed to pay complainant the sum of $400 as liquidated damages in the event he violated the terms of the agreement.

The contract was violated and the bill was filed to enjoin the defendant from further engaging in a competitive business. The court said:

"The substance of the whole paper is that the defendant covenants not to do a particular thing, and if he does, that he will pay $400 as satisfaction, if plaintiff elects to sue for damages; but this does not prevent the court from enjoining him from doing that which he has agreed not to do. He did not purchase the right to disregard the contract by agreeing to pay damages for a breach of it and in satisfaction thereof, for he had no such alternative right."

The court then held that the parties may stipulate that, in case of a breach, a stated sum shall be paid, and that this should be the exclusive remedy.

Referring to the contract involved the court further said:

"The court erred in refusing the injunction to the final hearing, and allowing defendant to give bond to stay its restraining power or in lieu of its exercise. Plaintiff is entitled to the specific relief by injunction and to any damages he may be able to prove up to the operation of the injunction order, when the defendant must cease his violation of the covenant by discontinuing the business."

The only remaining question is, Did the complainant, by the acts detailed above, elect to exercise his right or remedy of specific performance?

For the reasons stated by the chancellor, we are of the opinion that he did. He obtained this result just as effectively as had he filed a bill and obtained an injunction. He caused the defendant to abandon his business in Chattanooga, and move to another city.

The principle involved was stated by KNOWLTON, Judge, in the case of *Miller* v. *Hyde,* 37 N. E., 760, 161 Mass., 472, 25 L. R. A., 42, 42 Am. St. Rep., 424, as follows: .

"The principal question in cases of this kind is, at what stage of the proceeding the owner shall be deemed to have made an election that binds him. On principle, and as a general rule, he should be bound by the election he makes, if in making it he goes so far as to affect the rights or interests of the other party. It would be unjust, when he may proceed only in one or the other of two opposite directions, that he should go forward in

one direction in such a way as materially to affect the other party, and then turn backward and go on in the other, and compel his adversary to satisfy him in a different way.''

Equitable estoppel is estoppel *in pais*, and signifies estoppel by misrepresentation. 21 Corpus Juris, 1061.

The general rule of equitable estoppel is thus stated in 21 Corpus Juris, 1202:

''Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations. It is upon this just and equitable principle that a person is said to be estopped to take advantage of his own fraud or wrong. The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party.''

The text is generally approved by the courts of the land as will appear from the numerous cases cited in the note.

Preceding the above text it is said: ''The term includes the doctrine of election, the principle which precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him, and certain forms of waiver.''

Under the head of Election of Remedies, 20 Corpus Juris, 33, it is said: ''Although acts prior to the actual commencement of legal proceedings indicate an intention to rely upon one remedial right, yet they do not constitute an election which will preclude the subsequent pros-

Frumin v. Chazen.

ecution of an action or suit based upon an inconsistent remedial right, unless the acts contain the elements of an estoppel *in pais.*"

And on page 34 it is said: "The mere giving of notice of an intention to pursue a certain course, which is not acted upon by either party, or which does not alter nor affect the position of the party receiving it, is not such an election of remedies as will bind the party serving it so as to preclude pursuing a different course, especially where the notice was based upon a mistaken notice as to his rights. Where, however, the terms of a contract provide for liquidated damages in the event of a breach, and one of the parties serves notice that he will not proceed further and demands the damages therein provided, it will constitute an election to pursue his remedy at law and will preclude a subsequent action for specific performance."

Upon the facts of this cause there can be no doubt but that the defendant, as found by the chancellor, acted upon the representations of the complainant as to filing a bill of injunction, to his prejudice, and the complainant should not now be permitted to pursue another and an inconsistent remedy.

The assignments of error raise other questions which are without merit, and which we deem unnecessary to detail or discuss in this opinion.