# Smyth, Appellant, *v.* McCarroll.

*Building restrictions—Stipulation for extension purposes—Interpretation—Private garage.*

A private garage, for the use of the occupants of a dwelling, does not violate a restriction that no building, except for residential purposes, shall be built upon the premises.  Such a garage, in view of the increased use of automobiles, is a proper appurtenance necessary to the enjoyment of the dwelling house.

Argued December 10, 1920.   Appeal, No. 330, Oct. T., 1920, by plaintiff, from decree of C. P. Montgomery County, sitting in equity, Dec. T., 1919, No. 4, dismissing bill in equity in the case of John W. Smyth v. William J. McCarroll.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Bill in equity for injunction to restrain the erection of a private garage.   Before SWARTZ, P. J..

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill.   Plaintiff appealed.

*Error assigned,* among others, was the decree of the court.

*Joseph R. Embery,* and with him *Nicholas Larzelere,* for appellant.—The erection of the private garage on

the defendant's lot violated the restrictions in the defendant's deed: Landell v. Hamilton, 175 Pa. 327; Crofton v. St. Clement's Church, 208 Pa. 209; Atherton v. Clearview Coal Co., 267 Pa. 425; Dewar v. Carson, 67 Pa. Superior Ct. 527; Englander v. Apfelbaum, 56 Pa. Superior Ct. 145.

*J. F. Shields,* of *Shields & Clark,* and with him *Evans, High, Dettra & Swartz,* for appellee.—All doubts are to be resolved against building restrictions and in favor of the free and unrestricted use of the property. A private garage is a necessary appurtenant to a residential property: Johnson v. Jones, 244 Pa. 386; Fortesque v. Carroll, 76 N. J. Eq. 583; St. Andrew's Lutheran Church's App., 57 Pa. 512.

OPINION BY LINN, J., March 5, 1921:

This appeal is from the refusal to restrain alleged violation of a building restriction. The decree is based on findings of fact supported by evidence and is justified by appellee upon two theories: (1) that the restriction does not prohibit the construction of the garage on the proposed location and (2) if it does, the parties to be benefited by it have so changed the conditions that it would be inequitable to enforce the restriction against defendant. The bill averred that defendant owned a corner lot for convenience called B; that complainant owned the adjoining lot on the left, A, abutting on one only of the two streets bounding B. These lots had formerly been a part of a large tract purchased in 1903 by E. Clarence Miller and by him plotted and sold for suburban residence purposes near this city. He conveyed lots by deeds containing building restrictions to various people who built upon them. The conveyance to defendant was subject to the restrictions imposed by Miller, "That no building to be erected upon said premises shall ever be used or occupied as a hotel, tavern, drinking saloon, blacksmith shop, carpenter or wheel-

wright shop, steam mill, tannery, slaughter house, skin dressing establishment, stable, glue, soap, candle or starch manufactory, or for any other offensive use or occupation whatsoever; and also that no building except for residence purposes shall ever be built upon said premises and any dwelling house to be erected shall cost at least Five thousand dollars and shall recede not less than fifty feet back from the building lines of the said Sharpless Road and Mountain Avenue upon which said lot fronts or abuts, and not less than twenty-five feet from the Northwest and Southwest lines of said lot, so that there shall be left clear and unobstructed except by porches, steps, cellar doors, fences, trees and shrubbery, at least fifty feet between said building and the building lines of said Sharpless Road and Mountain Avenue upon which said lot fronts or abuts and twenty-five feet between said building and the North-west and South-west lines of said lot; that no well for drinking purposes shall be built or sunk upon said premises." Restrictions, as the learned chancellor says "in the main features the same" were likewise imposed by Miller upon all the lots sold for the purpose and with the result of establishing a suburban residential section of high order; these restrictions "were for the common benefit of all the lot owners, and for the harmonious and symmetrical appearance of the entire development," and as he adds, "This is the interpretation given to the restrictions as shown by the findings by practically all the lot owners, the original grantor, and the plaintiff himself."

The parties to this suit occupy dwelling houses on lots A and B, built at least fifty feet back from the building lines of the abutting streets and at least twenty-five feet from the side boundaries as required by the restrictions in their respective deeds. On October 20, 1919, defendant notified plaintiff that he would erect a garage for his own use at the southwest corner of lot B. Plaintiff objected to the garage at any point nearer than twenty-five feet of the boundary line between A and B, and filed this

bill to restrain defendant, who proposed to erect a garage twenty-three feet by twenty-five feet, on the rear line of lot B and within two feet from the dividing line between A and B.  In the block of ground containing A and B there are about fourteen lots on which ten of the lot owners have erected garages—generally in one of the rear corners of the lot and always on or near a side boundary.  Plaintiff purchased A in May, 1916, and erected a garage on the southwest corner of it (being the corner away from lot B) one side of his garage being less than two feet from the dividing line of the lot owner on plaintiff's left and the other on the rear boundary.

The learned chancellor has found that a "garage is essential to the use and enjoyment of defendant's premises, and to all other lots sold and developed under Mr. Miller's improvement scheme"; that "The need of a garage arises from the increased use of the automobile, which is now practically universal among the occupants of suburban residences of the character found on Mr. Miller's Melrose Park development.  The forty or more owners of these improved lots all, save about half a dozen, have garages on their premises.  These properties are not saleable without garage facilities.  The plaintiff admits that without the privilege of constructing a garage on his lot to suit his taste, he would not have bought from Mr. Kramer."

For convenience of interpretation, the restriction may be divided into four parts: (1) prohibiting certain uses as specified; (2) "no building except for residence purposes shall ever be built upon said premises"; (3) "any dwelling house to be erected shall cost at least $5,000 and shall recede not less than fifty feet from the building lines of the said Sharpless Road and Mountain Avenue upon which said lot fronts or abuts, and not less than twenty-five feet from the northwest and southwest lines of said lot, so that there shall be left clear and unobstructed, except by porches, steps, cellar doors, fences, trees and shrubbery at least fifty feet between said build-

ing and the building lines of said Sharpless Road and Mountain Avenue upon which said lot fronts or abuts, and twenty-five feet between said building and the North-west and South-west lines of said lot"; (4) that "no well," etc.

The rule of interpretation is that "all doubts are to be resolved against the restriction and in favor of the free and unrestricted use of the property": Johnson v. Jones, 244 Pa. 386, 389. As a garage "is essential to the use and enjoyment of defendant's premises and to all other lots sold and developed under Mr. Miller's improvement scheme" it is not a "building" prohibited by division 2 of the restriction, but an essential appurtenance necessary to the enjoyment of the dwelling house permitted by division 3,—a structure necessary for the proper enjoyment of the dwelling, and therefore a structure for "residence purposes," and, by the rule of interpretation quoted, a permitted use of the lot. Moreover, this is also the interpretation of the restriction made by the common grantor and his vendees or persons claiming under them, and so far as appears no one has heretofore objected to that meaning save plaintiff, though he himself built his garage in harmony with it and in disregard of what he now contends to be the effect of the twenty-five-foot restriction. That interpretation by the grantors and the others is important in this case as indicating at least what the immediate parties to the restriction, or their grantees, understood it to mean; and the use of the evidence on that subject for the purpose of understanding the restriction as the parties who made it understood it, disposes adversely to appellant of the contentions of his learned counsel to the effect that nothing done by Miller or his grantees could affect appellant because (1) it was not necessary "for plaintiff to act as public prosecutor or public litigant against every owner who might have violated the restrictions in his deed" (2) those alleged violations "did no substantial damage to plaintiff as does the erection of the garage by the de-

142, (1921).]          Opinion of the Court.

fendant"; (3) the decree would not be sustained because "it was not shown that plaintiff had any knowledge of the restrictive covenants in the other deeds" or (4) it was "not shown when those other garages were erected." Agreeing with the learned chancellor that the proper interpretation of the restriction does not prohibit the construction of a garage at the location proposed for the use of the resident in the dwelling house, it becomes unnecessary to consider the remaining contentions of the appellee in support of the decree.

The decree is affirmed at the cost of appellant.