## JOHN D. GIBSON and MARTHA GIBSON,

### *vs.*

## CHARLES MAIN.

### *New Castle, July* 27, 1923.

A deed forbidding erection of "any slaughterhouse, piggery, smithshop, forge, furnace, foundry, or any other factory of any kind whatsoever, or any brewery, distillery or any other noxious or dangerous trade or business, and *     *     *     any stores or garages," *held* not to forbid erection of a private garage housing two cars to accommodate the occupants of the grantee's two houses, but only such structures as are identified with trade or business or some *quasi* public use.

Restrictions in a deed are to be construed strictly against the grantor and liberally in favor of the free use of the land by the grantee.

The defenition of "public garage" in a city ordinance is of no significance in determining the rights of the parties under a building restriction in a deed.

The erection of a private garage, when not unlawful or a nuisance, will not be enjoined because it impairs the value of adjoining property.

INJUNCTION BILL to restrain the defendant from further continuing the erection and construction of a garage. The bill charges that the complainants are owners of a lot of land with a dwelling house thereon erected, known as 607 McLane Street, Wilmington, Delaware, and that the defendant is the owner of an adjoining lot and that his title thereto is subject to the following restriction contained in his deed therefor:

"   *   *   *   That the purchaser shall not and will not at any time hereafter, erect or permit any building within twenty feet of the front building line of any of said lots or parcels of land, and will not erect or permit upon any part of said lots, hereinbefore described, any frame buildings, or any buildings without roofs of slate or metal or other fireproof materials, or any slaughterhouse, piggery, smithshop, forge, furnace, foundry or any other factory of any kind whatsoever, or any brewery, distillery or any other noxious or dangerous trade or business, and will not erect nor permit, during a period of twenty years from the twenty-eighth day of February, A. D. nineteen hundred and twenty-one, any stores or garages upon said land."

The bill further charges that the lot owned by the complainants and the lot owned by the defendant are each a part of an entire

tract of land known as Union Park Gardens, which tract is subject to numerous restrictions regarding the erection of garages in reliance upon which divers persons, including the complainants, have purchased lots of land with dwelling houses thereon for the sole purpose of using them as residences. It is also charged that the defendant on or about February 12, 1923, began the erection and construction of a garage on the lot subject to the said restriction to the injury and damage of the complainants, and that the maintenance of the structure either as a garage or for any other purpose will greatly impair and depreciate the value of the neighboring properties including that of the complainants.

The prayer is that the defendant may be enjoined from further continuing the erection and construction of said garage in violation of the terms of his deed, and that a mandatory injunction may issue commanding the defendant to take down and remove the said garage, or such part of it as has been erected.

The answer sets forth that the lot on McLane Street owned by the defendant is in the rear of and abuts upon two other lots of land owned by the defendant, upon which are two dwelling houses, and that these two lots, together with the lot of the defendant on McLane Street, form one lot or body of land. The answer admits that the defendant has begun the erection of the garage as charged in the bill, but avers that it is solely for the private accommodation of the occupants of the two dwelling houses, that the proposed structure will conform architecturally with the neighboring properties, will not impair or depreciate their values, and that in so erecting the garage the defendant is not acting in violation of the restriction in the deed referred to. The answer further avers that the defendant has no intention of using the proposed structure for any prohibited or unlawful purpose.

It appears from the testimony that the lots on which the defendant's two dwelling houses are erected face on East Grant Avenue; that his lot on McLane Street is unimproved; and that the defendant acquired title to the latter lot at a time subsequent to when he acquired title to the former.

The cause was heard on bill, answer, oral testimony heard by the Chancellor, exhibits and stipulation signed by solicitors for the respective parties.

*H. Eugene Savery*, for the complainants.

*Aaron Finger*, for the defendant.

The Chancellor. There is no material issue of fact in this case. The stipulation filed in behalf of the parties narrows the questions of law to the single one of whether under the terms of the restriction in his deed the defendant may erect the structure in question. The proposed structure is intended to be used as a private garage. It is intended at the present for the accomodation of the occupants of the defendant's two houses on East Grant Avenue. These houses are now occupied by the defendant's lessees, but the defendant testifies that he contemplates occupying one of them himself in the near future, when he will use the garage for the housing of his own automobiles. The garage is designed to accommodate two cars. It is so located as to permit the defendant to erect a bungalow on the same lot, which he testifies he intends to do. It is clear from the evidence, therefore, that the proposed structure is to be used as a private garage.

It appears that there are numerous private garages located within the Union Park Gardens section, constructed for the convencience of residents. This section was developed as a neighborhood scheme. Not all the deeds for lots in the section in question contain the same sort of restriction as to garages as is found in the defendant's deed. In many of them, the restriction as to garages is that no garage should be built within fifty feet of the building line of any street and that in no case should any "public garage" be erected or permitted during a period of twenty years (except in a certain portion of the tract not important in this connection). The complainants' deed carries this sort of restriction as do also the defendant's deeds to the East Grant Avenue lots which are embraced within the Union Park Gardens. The complainants may, therefore, erect a private garage on their lot on McLane Street, next door to the defendant's lot, and thus do that which they seek to restrian the defendant from doing.

The defendant contends that the restriction in the defendant's deed for the McLane Street lot (recited at length in the statement of facts) is, so far as it deals with garages, to be construed as applying only to public garages and was not designed and intended

to apply to private garages constructed solely for the convenience of the resident householder. In considering restrictions in a deed the general principle is ever to be borne in mind that they are to be construed strictly against the grantor and liberally in favor of the free use of the land by the grantee. A reading of the restriction in this case gives force to the defendant's contention as to its meaning. The things forbidden to be erected are "slaughterhouse, piggery, smithshop, forge, furnace, foundry, or any other factory of any kind whatsoever, or any brewery, distillery, or any other noxious or dangerous trade or business, and * * * any stores or garages" for twenty years. Everything in this catalogue of things is something which speaks of trade or industry, unless it be "garages." It was the obvious purpose of the restriction to protect this particular locality which was developed as a purely residential section from the annoyance which the presence of objectionable trades or pursuits would occasion. When in this list of forbidden things "garages" is included, I am constrained to the view that what is meant is garages intended to be used in the way of business. *Sullivan v. Sprung*, 170 *App. Div.* 237, 156 *N. Y. Supp.* 332. In *Smyth v. McCarroll*, 76 *Pa. Super. Ct.* 142, it was held that a private garage detached from a residence was not erected in violation of a covenant that "no building except for residence purposes shall ever be built upon said premises." This ruling was based on the conception that a garage has grown to be so essential to the use and enjoyment of premises as a residence, that it may when intended solely to be used in connection therewith be regarded as a building for "residence purposes." If this ruling be accepted as sound, then the structure here contemplated, though conveniently described by the parties as a "garage" is nevertheless properly to be regarded as a building for residential purposes and if so regarded would not come within the terms of the restrictive language. I do not rely upon this logic, however. I prefer rather to rest my view upon the reasoning first indicated, viz., that the company of words in which the word "garages" is found indicates that it is meant to apply to such structures only as are identified with trade or business or some *quasi* public use.

This view is confirmed by the fact that those who have had to do with the development of Union Park Gardens have not seen fit

to prohibit other purchasers of lots from erecting what are called private garages, though public garages are expressly forbidden. Evidently the persons responsible for building up this residential section did not conceive that a structure for privately housing the motor car of a resident was such a thing as would destroy the sort of residential character which they desired the neighborhood to possess. Indeed if such private garages were designed to be prohibited, the likelihood is that the class of persons who would be most apt to build attractive homes and thereby make the neighborhood more desirable, would be driven away.

The complainants rely upon *Sanford v. Keer, 80 N. J. Eq.* 240, 83 *Atl.* 225, 40 *L. R. A.* (*N. S.*) 1090, in support of their contention. That case is clearly distinguishable from this both with respect to the nature of the restriction and the facts surrounding it.

It is pointed out that the City of Wilmington has by ordinance defined the term "public garages" and that the proposed structure falls within this definition. In response to this suggestion, it is sufficient to say that the case presented is not based on any ordinance. It is based solely on the rights of the complainants which are alleged to grow out of the restriction in the deed. In interpreting the language of the deed, arbitrary definitions given to words by the city ordinance are of no significance. Nor does the fact, if it be such, that the building of the garage will impair the value of the complainants' adjoining premises count for anything, for if the erection of the structure is not forbidden by the deed, it not being unlawful or a nuisance, the defendant is within his rights.

For the reasons given the bill will be dismissed with costs on the complainants.

Note. On appeal the decree of the Chancellor was affirmed. See *post p.* 449.