MATTHEW J. McDERMOTT, MARGUERITE J. McDERMOTT, J. SANDERSON TRUMP AND HANNAH P. TRUMP,

*vs.*

WILLIAM W. WILSON.

*Sussex, June* 27, 1934.

*Meyer Ableman* and *James M. Tunnell,* for complainants.

*Howard E. Lynch, Jr.,* and *William M. Hope,* of the firm of Hope & Harmonson, for defendant.

THE CHANCELLOR: The defendant acquired title to a lot of land located in Rehoboth Beach, a part of block thirty-four. The defendant's deed contains certain restrictions. The material restriction for the purposes of this case is as follows:

"No building as permanent structure, exclusive of porches, shall be erected within twenty feet of the front line of any lot * * * in the said block numbered thirty-four."

It is alleged by the bill and denied by the answer that the defendant has violated the restriction by erecting a permanent structure which extends into the restricted area. The building which the defendant has erected is a summer cottage. In the front of the cottage proper, he has erected a structure which extends out upon the twenty foot front area for about ten feet, which he insists is a porch and is therefore excepted from the deed's restriction. The com-

plainants allege that the structure is not a porch and that its continued presence in its present form should be enjoined.

The complainants offered some evidence tending to show that what may be called the main building, as distinguished from the questioned structure, extends to within less than twenty feet of the front line of the lot. The evidence produced by the defendant, however, satisfactorily shows that the main building is not located in violation of the restriction.

The case is concerned then only with whether the structure in front of the cottage is a porch within the meaning of the excluding language of the restriction.

The so-called porch is a two-story one. A second story porch is superimposed on a first story one, the roof of the latter becoming the floor of the former.

No complaint is made concerning the first floor porch. It is conceded to be not in violation of the restriction.

The complaint is directed against the upper porch. That porch extends, as does the lower one, across the entire, or nearly the entire, front of the cottage. Its roof is supported by four posts about eight or nine inches square, standing in a row parallel to the front of the cottage at a distance therefrom equal to the depth of the porch, the posts resting on the roof of the lower porch. The roof has a pitch to it, which blends into the pitch of the roof of the cottage. The line of the cottage roof and the porch roof is not however straight. It is broken at the point where the porch roof connects. Plates stretch from the tops of the corner posts to the main building, and the triangular space at the top-ends between the pitched roof of the porch and the plates is built in with shingles.

The upper porch, unlike the lower one, is surrounded on its three exterior sides by a balustrade or rail made of shingles, extending up from the floor. The appearance of the balustrade is therefore solid, unlike the appearance presented by a balustrade made of spindles. The balustrade

does not reach to the floor however. There is an open space of two inches from the floor to the bottom of the balustrade. This space is for the purpose of allowing water to drain off the floor, which has a slight pitch. The balustrade itself is two feet four inches high, not an unusual height.

From the top of the balustrade to the plates above, the distance is four feet two inches. This space is open on the two ends and front, being broken only by the supporting posts in front.

Such is the description in a general way of the second story structure which the defendant insists is a porch and the complainants insist is not a porch. Photographs of it are in evidence. It was conceded at the hearing that if the structure in question is a porch, the circumstance that it is a second story one does not render it any the less a porch within the meaning of the exception to the restriction.

Stress appears to be laid on the suggestion that the purpose of the restriction is to assure to adjoining owners the free passage of light and air and an unobstructed view over the twenty foot area. But even so, it cannot be disputed that to the extent that a porch interferes with such purpose the restriction in terms allows it. It is of no pertinency for the complainants to say as they do, that restrictions of the kind here involved are to be construed in the light of the attending facts and circumstances and the purpose to be served, for in the only particular here under examination, namely porches, the restriction in terms allows them. Therefore those cases cited by the solicitors for the complainants are not in point, which hold that a porch or overhanging bay window is such a part of a building as, if erected on a restricted area, will be held to be violative of a general restriction which does not except porches or bay windows. In those cases facts and circumstances existing at the time the restriction is imposed and its manifest purpose, may well be taken into account as interpretative aids.

There is a general principle to be borne in mind in

considering whether the act of the defendant in erecting the structure falls within the prohibitive language of the restriction. It is, that "the party having the power to stipulate in his own favor should not neglect to make his exactions clear and further 'that every man's grant is to be taken most strongly against himself.'" *Old Time Petroleum Co. v. Turcol, et ux.,* 18 *Del. Ch.* 121, 156 *A.* 501, 505. It is again expressed as follows: "Restrictions in a deed are to be taken most strongly against the grantor, and where the meaning of a restriction is doubtful, the doubt shall be resolved in favor of the grantee." *Gibson, et ux., v. Main,* 14 *Del. Ch.* 449, 129 *A.* 259, 260, affirming 14 *Del. Ch.* 112, 122 *A.* 188.

This principle leads to this result, that if what the defendant has erected is a porch, the circumstance that it is of such a type as to defeat either in whole or in part the purpose of an unobstructed view which it is claimed the restriction was in general designed to serve, neither the grantor nor those claiming through or under him, as the complainants, can complain. If only those porches of certain types of construction were intended to be permitted, the restriction should have been more particular in its definition. The principle of interpretation above stated entitles the defendant as grantee to insist that every reasonable indulgence of liberality of interpretation be entertained in his favor and, conversely, that the grantor and his privies be not permitted to narrow the general import of language which it was in the choice of the grantor to adopt.

If therefore the second story of the structure is a porch, even though it be of a type that may annoy the complainants, the bill must be dismissed.

The question recurs then, is this structure in its upper portion a porch? The defendant called an architect as an expert witness who defined a porch as "a partly enclosed construction applied to a building—an open construction built to the main part of the building," which may be

enclosed or not. The complainants called as an expert witness a dealer in building material who to some extent engages in the building business. He expressed the opinion that the upper structure has the appearance of an unfinished sun parlor, and he says a sun parlor is so constructed as to be a part of the house proper. The witness did not in terms declare the structure not to be a porch. I infer that he entertains the view that it is not. Saying that the structure has the appearance of an unfinished sun parlor does not get us very far along towards an answer to the question of whether the structure is a porch. What appears to have influenced the judgment of the complainants' expert witness, is the fact that the balustrade is not an open one. If it were, he frankly said he would not hold the view he did, because, he testified, the solid structure between the roof and the plate is not unusual for that type of porch.

The foregoing constitutes all of the testimony which can be described as coming from experts. That a porch ceases to be a porch if it is partly enclosed, is a proposition which I can find supported nowhere. The expert witnesses in this case are in accord in repudiating it. In *Hieronimus, et al., v. Moran, et al.*, 272 *Ill.* 254, 111 *N. E.* 1022, 1025, the following definitions of the word "porch" were accepted as authoritative:

> " 'An exterior appendage to a building forming a covered approach or vestibule to a doorway; a covered way or entrance, whether inclosed or uninclosed.' * * * 'A covered place of entrance to a building and differentiated from its principal mass. Its forms are various, sometimes extending above by more than one story, sometimes inclosed save for the doorway, then again open to the outside on three sides, with its outer corners supported by columns or piers.' "

The fact that the line of the roof pitch of the cottage connects with the line of the roof pitch of the porch (the line is not straight, but broken), is not determinative of the structure's character. That is a feature which appears to me to be an immaterial one. In *Hieronimus, et al., v.*

*Moran, et al., supra,* the defendants contended that the complainants had violated the building restriction by themselves erecting what they called porches, which were permitted, but which the defendants claimed were not porches. The Supreme Court of Illinois described the top porch of the building of one of the complainants as having a "roof coming down from and forming apparently a part of the main roof of the building." This manner of roof construction did not, however, have influence with the court to deter it from pronouncing the projection to be a porch.

The feature which the complainants appear mostly to rely upon as showing the structure not to be a porch, is the appearance of the balustrade. Their only expert concedes that his view that the structure is not a, porch would be different if the balustrade were. of open construction. That a solidly constructed balustrade does not deprive a porch of its character as such was recognized by the courts in the only cases to which my attention has been called. In *Hieronimus, et al., v. Moran, et al., supra,* the first floor porch of one of the complainants and the upper story porches of another of the complainants, were constructed with brick balustrades, and yet they were held to be porches. In *Morrow v. Hasselman, et al.,* 69 *N. J. Eq.* 612, 61 *A.* 369, it was contended that the complainant was barred from complaining against violation of a building restriction by the defendants because of the complainant's own violation of the restriction in that she had erected a second story structure called a piazza or porch, which was in fact not one. Inasmuch as the restriction excepted piazzas and porches from its prohibition, the question before the court was whether the complainant's second story structure was a piazza or porch. The court held that it was, notwithstanding that for a distance of three feet from the bottom the porch was enclosed. Similarly in *Binswanger v. Hyman,* 271 *Pa.* 296, 114 *A.* 628, the fact that in a tier of three porches extending to the roof of the main building, each porch contained a concrete balustrade three feet

high, was held not to deprive the structures of their character of porches which they otherwise possessed.

If the defendant's cottage had a porch appended to only the first floor and the same were constructed with just such a balustrade. as is the present second story porch, it seems to me to be quite clear that no one would consider it other than a porch. Such porches are to be found in front of a number of cottages at Rehoboth Beach. If the structure with a balustrade like the one in question would be a porch on the ground floor, elevating it to the second story would not change its nature.

There is no evidence in this case which justifies the view that the structure in question is so constructed as to create a room which would be available as a constituent part of the house for indoor living or sleeping purposes. I infer from one remark which was dropped at the hearing that the defendant, if he prevails in this suit, is believed to entertain a secret purpose later to convert the second story porch into a portion of the house proper and that he is thought to be planning an approach to his ultimate purpose by gentle degrees. There is no evidence to support such a belief. If subsequent events should show that the defendant had so altered or purposed to alter the porch as to change its character, the outcome of the pending suit will afford no bar to relief against the altered conditions.

A decree will be entered dismissing the bill.

NOTE. After the filing of the bill of complaint in this cause, and prior to the hearing, the defendant, conceding that the structure as then existing was violative of the restriction, made certain changes and alterations in the front portion of the building on his lot, leaving it in its present unobjectionable form; and because of this circumstance the costs incurred up to the time of hearing were taxed against the defendant and the costs incurred by reason of the hearing, and thereafter, were taxed against the complainants.