**BRANMAR THEATRE CO., a Delaware corporation, Plaintiff,**

**v.**

**BRANMAR, INC., a Delaware corporation, Defendant.**

Court of Chancery of Delaware, New Castle.

March 24, 1970.

David Snellenburg, II, Esquire, of Killoran & VanBrunt, Wilmington, for plaintiff.

John T. Gallagher, and George F. Gardner, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.

SHORT, Vice Chancellor.

This is an action for a declaratory judgment in which plaintiff seeks to enjoin defendant from cancelling a lease agreement previously executed by the parties. Defendant, by its answer, prays the court to find that it was entitled to treat the lease agreement as terminated because of a violation of a covenant therein prohibiting assignment by the lessee. This is the decision after final hearing.

Plaintiff was incorporated under the laws of Delaware on June 7, 1967. The owners of its outstanding capital stock were the Robert Rappaport family of Cleveland, Ohio. On June 9, 1967 plaintiff and defendant entered into a lease agreement for a motion picture theatre in the Branmar Shopping Center, New Castle County, Delaware. The lease, sixteen pages in length, recites that the lessor is to erect a theatre building in the shopping center. It provides for the payment of rent by the lessee to the lessor of $27,500 per year plus a percentage of gross admissions receipts, plus five per cent of any amounts paid to the lessee by refreshment concessionaires. The percentage of admissions figure is regulated by the type of attractions in the theatre, the minimum being five per cent and the maximum ten. The lease provides for a twenty year term with an option in the lessee to renew for an additional ten years. The lessee is to provide the lessor with a loan of $60,000, payable in installments, to be used for construction. The lessee is to provide, at its cost, whatever fixtures and equipment are necessary to operate the theatre. Paragraph 12 of the lease, the focal point of this lawsuit, provides:

"Lessee shall not sublet, assign, transfer or in any manner dispose of the said premises or any part thereof, for all or any part of the term hereby granted, without the prior written consent of the Lessor, such consent shall not be unreasonably withheld."

Joseph Luria, the principal for Branmar Shopping Center testified at trial that he negotiated the lease agreement with Isador Rappaport; that he made inquiries about Rappaport's ability to manage a theatre and satisfied himself that Rappaport had the competence and the important industry connections to successfully operate the theatre. It appears that Rappaport and his son operate a successful theatre in Cleveland, Ohio and have owned and operated theatres elsewhere.

Following execution of the lease the Rappaports were approached by Muriel Schwartz and Reba Schwartz, operators of ten theatres in the Delaware and neighboring Maryland area, with an offer to manage the theatre for the Rappaports who had no other business interests in the Wilmington area. This offer was not accepted but the Schwartzes subsequently agreed with the Rappaports to purchase the lease from plaintiff and have it assigned to them. An assignment was executed by plaintiff to the Schwartzes. Defendant rejected the assignment under the power reserved in Paragraph 12 of the lease. On May 29, 1969 the Schwartzes purchased the outstanding shares of plaintiff from the Rappaports. Upon receipt of notice of the sale defendant advised plaintiff that it considered the sale of the shares to the Schwartzes to be a breach of Paragraph 12 of the lease and the lease to be null and void.

The theatre building is now substantially completed and ready for occupancy. The Schwartzes are ready and willing to perform under the lease agreement. Defendant intends to substitute a new tenant, Sameric Theatres, for the corporate plaintiff, contending that Sameric is a better qualified operator than the Schwartzes.

Defendant argues that the sale of stock was in legal effect an assignment of

the lease by the Rappaports to the Schwartzes, was in breach of Paragraph 12 of the lease, and that it was, therefore, justified in terminating plaintiff's leasehold interest. That in the absence of fraud, and none is charged here, transfer of stock of a corporate lessee is ordinarily not a violation of a clause prohibiting assignment is clear from the authorities. Posner v. Air Brakes and Equipment Corporation, 2 N.J. Super. 187, 62 A.2d 711; Burrows Motor Co. v. Davis, 76 A.2d 163 (D.C.Mun.App.); Alabama Vermiculite Corp. v. Patterson, D.C., 124 F.Supp. 441; Ser-Bye Corporation v. C. P. & G. Markets, 78 Cal.App.2d 915, 179 P.2d 342. Defendant contends, however, that this is not the ordinary case. Here, it says, due to the nature of the motion picture business, the performance required was by the Rappaports personally. But while defendant's negotiations were with a member of the Rappaport family when the lease was executed it chose to let the theatre to a corporation whose stock might foreseeably be transferred by the then stockholders. In the preparation of the lease, a document of sixteen pages, defendant was careful to spell out in detail the rights and duties of the parties. It did not, however, see fit to provide for forfeiture in the event the stockholders sold their shares. Had this been the intent it would have been a simple matter to have so provided. As the court said in Ser-Bye Corporation v. C. P. & G. Markets, supra: "When plaintiff chose to deal with a corporation as its tenant it must also have known that shares of stock therein might be owned by different stockholders and were subject to assignment to others in the ordinary course of business. The inhibitions against assignment run as to the lease itself and not to the stock in the lessee corporation * * *. Had the parties to the lease intended that the sale and transfer by one or more stockholders in the lessee corporation * * * of their shares of stock therein was to be deemed to be an assignment or attempted assignment of the lease itself, such fact should have been expressed in the lease in clear and unequivo-

cal language." And see Associated Cotton Shops, Inc. v. Evergreen Park Shopping Plaza of Delaware, Inc., 27 Ill.App.2d 467, 170 N.E.2d 35, wherein the lease so provided.

Defendant contends that the evidence clearly shows that the Schwartzes do not have the connections in the industry to obtain first quality motion pictures which is of prime importance to a landlord under "a percentage rental agreement." If these were the facts defendant's theory that the lease called for personal performance by the Rappaports might have some merit. Compare, Morrisville Shopping Center v. Sun Ray Drug Co., 381 Pa. 576, 112 A.2d 183. But the evidence on which defendant relies is a comparison of connections by the Schwartzes with those of defendant's proposed new lessee. This is wholly immaterial. If the question of ability to perform to defendant's best advantage is material at all it is as between the Schwartzes and the Rappaports and there is simply no competent evidence in the record to answer this question. Moreover, defendant's characterization of the lease as "a percentage rental agreement" is not justified. The rental terms are not based solely on percentages but on a substantial stipulated annual rent plus percentages. What difference in dollars the percentages would amount to depending upon the identity of the theatre's management does not appear.

■ Conditions and restrictions in a deed or lease which upon a breach work a forfeiture of estate are not favored by the law. Old Time Petroleum Co. v. Turcol, 18 Del.Ch. 121, 156 A. 501. In the cited case the Chancellor said: "There is no distinction to be drawn between a deed and a lease for a term in applying the rule of construction, that where the language is uncertain, the grantee or the lessee should be favored by a liberality of construction in his favor. * * * This rule rests on the principle that the party having the power to stipulate in his own favor should not neglect to make his exactions clear and fur-

ther 'that every man's grant is to be taken most strongly against himself.' * * * The disfavor in which forfeitures are viewed gives a special reason for invoking this general rule of construction against the person whose granting language is appealed to as the source of a claimed forfeiture." This rule is applicable to the circumstances of the present case.

█ Defendant suggests that since "the Rappaports" could not assign the lease without its consent they should not be permitted to accomplish the same result by transfer of their stock. But the rule that precludes a person from doing indirectly what he cannot do directly has no application to the present case. The attempted assignment was not by the Rappaports but by plaintiff corporation, the sale of stock by its stockholders. Since defendant has failed to show circumstances to justify ignoring the corporation's separate existence reliance upon the cited rule is misplaced.

█ I find that the sale of stock by the Rappaports to the Schwartzes was not an assignment within the terms of Paragraph 12 of the lease and that the same remains in full force and effect. Order on notice.