JEFFERSON CHEMICAL COMPANY, Inc.,
a Delaware corporation, Plaintiff,

v.

MOBAY CHEMICAL COMPANY, a Delaware corporation, Defendant.

Court of Chancery of Delaware,
New Castle.

June 10, 1970.

James M. Tunnell, Jr., and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, Carl G. Ries, Houston, Tex., and John R. Allen and James R. Sweeney, of Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., for plaintiff.

David F. Anderson, E. Dickinson Griffenberg, Jr., and Michael D. Goldman, of Potter, Anderson & Corroon, Wilmington, Clelle W. Upchurch, District of Columbia, and John H. Sutherland, St. Louis, Mo., for defendant.

DUFFY, Chancellor:

On July 30, 1968 Mobay Chemical Company, defendant, (Mobay), notified Jefferson Chemical Company, Inc., plaintiff (Jefferson), of its intention to re-acquire rights to U.S. Letters Patent No. 3,102,875 ("Heiss patent") and a pending patent application pursuant to an agreement between the parties dated January 26, 1966. Thereafter, Jefferson filed in this Court a complaint for declaratory relief in which it seeks to remove this cloud on its rights to the Heiss patent. This is the decision on Jefferson's motion for summary judgment.[1]

A.

Jefferson contends that Mobay may not assert, as a failure of condition to the 1966 contract, Jefferson's agreement on June 12, 1968 to dismissal of a patent infringement action in the United States District Court for the Northern District of Illinois against The General Tire & Rubber Company (General Tire). That action was filed by Jefferson on January 25, 1968, one day before expiration of a two-year period during which (under the 1966 contract) it was to have either (a) granted a license under the Heiss patent, or (b) "filed at least one complaint in a Federal District Court charging at least one party with infringement" of the Heiss patent. General Tire moved to dismiss for improper venue, and

the order of dismissal states that Jefferson has

" * * * represented to the Court that it will not contest this procedural motion because it does not feel it should expend the necessary time and money when there is pending in the Southern District of New York, a complaint for Declaratory Judgment brought by the defendant herein, against the plaintiff on the same U.S. Patent No. 3,102,875 involved here, Civil Action 68 C 1227, filed March 26, 1968, which complaint plaintiff herein has answered and against which it has brought its counterclaims and in which action plaintiff can proceed on the merits of the issues which would be involved in the present proceeding."

Thus Jefferson had counterclaimed in the Southern District of New York alleging the same interference that it had pleaded in Illinois. But Mobay argues that Jefferson's dismissal in Illinois was a "termination" within the meaning of the contractual provision which states:

"5.1C In the event Jefferson terminates the lawsuit instituted by the complaint of paragraph 5.1B hereof without obtaining a judgment on the question of infringement or without granting a license on terms no less favorable to Jefferson than those recited in paragraph 4.2 hereof, Jefferson agrees to reassign promptly to Mobay * * * [the Heiss patent and the application]."

For this reason, says Mobay, the motion for summary judgment should be denied.

■ It is the province of courts to interpret (and not to make) contracts by ascertaining the legal import of the language employed by the parties themselves to express their agreement. Dover Glass Works Co. v. American Fire Ins. Co., 1 Marv. 32, 29 A. 1039 (1894). Our function is not to re-write or re-state what the parties have said. We read what is written and when

---

1. The material facts are stated in a prior opinion of this Court, Del.Ch., 253 A.2d 512 (1969).

it is plain, when only one meaning can be found in the words used, our duty is to state that meaning and go on to the next step in the judicial process.

■ Jefferson argues that the word "terminates" in § 5.1C means "terminates finally without revival in the same or a different forum." To adopt that view is to engraft on what the parties said. The word needs no construction. Terminate means terminate—to end. And Jefferson did just that to its lawsuit. There is no doubt, either, that the action which it ended was the same suit it filed to meet the contract provision with respect to charging infringement of the Heiss patent. Since Jefferson terminated "the" lawsuit without obtaining a judgment in its favor or without granting a license, it follows that it has not any benefit under § 5.1C.

### B.

But to say this is not to end the matter, because there remains the question of whether Mobay may rely on Jefferson's termination as a basis of its claim to re-assignment of the patent. Jefferson argues that to require re-assignment under the circumstances would be to enforce a forfeiture. I agree.

■ Equity, of course, abhors a forfeiture. And it is not obliged to permit a party to get the advantages which a forfeiture would give him. Old Time Petroleum Co. v. Turcol, 18 Del.Ch. 121, 156 A. 501 (1931). It will disregard a forfeiture occasioned by failure to comply with the very letter of an agreement when it has

been substantially performed. 2 Pomeroy's Equity Jurisprudence (5 ed) § 451b. I think that principle is applicable here.[2] And I say this because Jefferson had at all relevant times formally sought in an appropriate pleading to obtain from a Federal court "a judgment on the question of infringement". Specifically, it had submitted that issue in its counterclaim in New York before it dismissed in Illinois. Clearly that was the substantive objective sought under § 5.1C and Jefferson had that issue in litigation without interruption. This section seems directed only to requiring prosecution to judgment of the infringement issue and, indeed, no other purpose has been suggested. In any event, it was hardly designed to require maintenance of a lawsuit without reference to its purpose.

Dismissal by Jefferson in Illinois was a technical mistake (a stay should probably have been sought) which I think this Court should not turn into the basis for a judgment against it. This is particularly true when there is no showing of bad faith on Jefferson's part (as regards the dismissal), when it was proceeding to litigate diligently in New York, and when it has spent some $55,000 in counsel fees for that purpose. I should also note that it had paid Mobay some $90,000 pursuant to the contract.

Jefferson's motion does not include, and I do not decide, Mobay's right to judgment on its counterclaim based on Jefferson's alleged failure to use all reasonable efforts to license the Heiss patent within two years from the date of the contract.

Order on notice.

2. Mobay argues that the situation here is analogous to that which arises when an action brought within the period of limitations is dismissed and a new action is filed beyond the statutory period. 34 Am. Jur., Limitations of Actions, § 281. But I do not regard the analogy to statutory limitation at law as persuasive. Mobay also says that there is a strong tendency in the cases to leave parties, particularly sophisticated corporations, to their own

devices, even to the extent of enforcing a forfeiture. The contract, in particular that part of it spelling out forfeiture, and the circumstances of default are all significant factors in determining what a court does. I am not persuaded that the Court should here enforce a forfeiture following what I believe is a technical default in ending a given lawsuit. In my view the parties did not contract for a forfeiture. 2 Pomeroy, supra, § 450.