**REHOBOTH BAY MARINA, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**RAINBOW COVE, INC., a corporation of the State of Delaware, et al., Defendants.**

Court of Chancery of Delaware, Sussex.

March 22, 1974.

Paul R. Reed, A. Dean Betts, Betts & Lee, Georgetown, for plaintiff.

---

Jackson R. Dunlap, Jr., Dunlap & Holland, Georgetown, for defendants.

BROWN, Vice Chancellor.

Plaintiff, Rehoboth Bay Marina, Inc., has brought this action against its landlord, Rainbow Cove, Inc., to enforce the provisions of a written lease entered into between the parties on March 23, 1972. The premises covered by the written lease consist of a parcel of land fronting on Rehoboth Bay, a parking area and adjoining subaqueous lands beyond the high water mark which contain improvements designed for the use of 141 boat slips. The leased premises also adjoin other lands owned by Rehoboth Bay Marina, Inc. which are used for its business of boating sales and service.

The parties first entered into a lease for the premises on March 25, 1970 for a term of two years commencing April 1, 1970, and extending through March 31, 1972. The annual rental was established at $2,500 per year, payable in three installments of $500 on or before June 1, $1,000 on or before July 1, and $1,000 on or before August 1 of each year. Default for a period of ten days after any payment became due was stated to give the lessor the right to immediately retake possession without further legal proceedings. The lease agreement also included an option whereby Rehoboth Bay Marina could purchase the premises, on 30 days notice, for the sum of $65,000 during the first year of the lease and for the sum of $71,500 during the second year.

The second written lease, which is the one here under consideration, was also for a term of two years commencing April 1, 1972, and extending through March 31, 1974. The annual rental was increased to $4,000, payable in four installments of $1,000 on or before June 1, $1,000 on or before July 1, $1,000 on or before August 1 and $1,000 on or before August 15 of each year. The ten day default provision was retained, as was the option to purchase on 30 days notice during the term of the lease.

However, the stated purchase price was increased to $75,000 during the first year of the lease and $82,000 during the second. Neither lease contained any provision as to how or where the rent was to be paid.

The rental payments were made by the Plaintiff in full under both leases through June 1974, and there was apparently no problem of any consequence during that period as to the timeliness or manner of payment. The business offices of the parties are situated only a hundred feet or so from each other, and, as a general practice, someone on behalf of Rainbow Cove would periodically stop by the office of Rehoboth Bay Marina to pick up a check for the rental amount then due.

During March 1973, a representative of the landlord approached Mr. Oakley Dukes, president of Rehoboth Bay Marina, concerning his willingness to cancel the option to purchase. According to Dukes, he was offered the return of all lease payments previously made by Rehoboth Bay Marina plus $2,500 if this could be done. However, Plaintiff never agreed to do so.

Thereafter the rental check due on June 1 was picked up by a representative of Rainbow Cove as had been the previous practice, but subsequently no request was ever made for the July 1 or August 1 payment and they were not tendered by Plaintiff prior to the expiration of the ten day default period. Nor was any effort made by Rainbow Cove to pick up the rental payment due August 15, and it was not tendered on or before that date.

On August 15, 1973, Rehoboth Bay Marina was informed verbally by Rainbow Cove that its lease was terminated for its failure to pay rent in accordance with the terms of the lease. In response, and on the same day, an employee of the Plaintiff went to the office of Rainbow Cove to tender the rental payments, but his tender was refused. By a certified letter mailed on August 16, Rainbow Cove gave Plaintiff written notice of termination, but receipt of this letter was refused by the Plaintiff.

On the same day, August 16, Rehoboth Bay Marina mailed three separate checks in the sum of $1,000 each to Rainbow Cove in payment of the rent due on July 1, August 1 and August 15. These checks were received by Rainbow Cove on August 17 but were not negotiated. They were returned by counsel for Rainbow Cove by letter dated August 27 in which it was pointed out that Rainbow Cove considered the lease terminated and the option "no longer operative". In between, however, by letter of August 17 directed to Mr. Dukes as president of the corporation, Rainbow Cove acknowledged through counsel that it would be willing to execute a new agreement to permit Rehoboth Bay Marina to use the premises through March 31, 1974, on the same terms and conditions except that the option to purchase would be deleted. Finally, by letter dated August 24, Plaintiff gave notice that it desired to exercise the option.

Plaintiff argues that on these facts it is obvious that Rainbow Cove, by not requesting and picking up the rent checks as it had done for the previous three years, lulled Rehoboth Bay Marina into a technical default under the terms of the lease for the sole purpose of escaping the option clause. Upon analysis it is hard to conceive that Rainbow Cove had any other purpose in mind.

The various employees, officers and agents of the parties were familiar with each other and operated neighboring businesses only one hundred feet or so apart. From the testimony, their relationship had always been compatable to the point where someone would either call and then come over, or simply drop in to request and pick up the rent check. The rent had always been paid and there is nothing to indicate that it could not have been paid at any time by Plaintiff. Means of direct communication were readily available. Even if Plaintiff did neglect to make the payments when due, the circumstances were certainly consistent with a lack of concern over this on the part of Rainbow Cove. No demand was ever made for either the July 1 or August 1 payment, and, in the language of the Chancellor in Old Time Petroleum Co. v. Turcol, 18 Del.Ch. 121, 156 A. 501, 505 (1931), "no threat or warning of a forfeiture was ever so much as intimated by the landlord". I am satisfied from the evidence that the reason no demand for the delinquent rent was ever made was due to a fear that such a demand would produce payment, as it always had in the past, and thereby preclude the right of Rainbow Cove to declare the lease in default.

■ While parties to a lease are basically free to establish their own terms, it is a fundamental principle of law that forfeitures are not favored. Old Time Petroleum Co. v. Turcol, supra. In that case, which likewise involved an attempt to void a lease for delinquent payment of rent, and in which an option to purchase by the tenant was also involved, the summarization employed by the Chancellor seems equally at home here. As stated at 156 A. 505:

> "From these circumstances above detailed, I am convinced that the forfeiture was not in the interest of vindicating the landlord's right to receive rent, which presumably the forfeiture clause was designed to safeguard, but solely in the interest of destroying the tenant's right to enjoy the option privilege to purchase which the tenant had previously advised the landlord he proposed to exercise.

> "The case seems to me to be one in which, under the peculiar circumstances, the defendant should not be permitted to avail himself of the advantages which a forfeiture would give him."

■ Where, as here, there is no particular manner or place of payment specified in the written lease, it would be inequitable to permit the landlord to abandon the method of collecting the rent utilized for several years, to make no demand or mention of any default for two and one-half months when it would have been natural and simple to do so if it was concerned over receiving the rent, and to then declare the

lease to be terminated because it had not been paid, while at the same time indicating that the tenant might continue in possession on the same rental terms so long as the option to purchase be removed.

I therefore conclude that the Defendant Rainbow Cove was not entitled to unilaterally declare the lease to be broken and terminated and to refuse the rental payments when they were tendered. Plaintiff Rehoboth Bay Marina is entitled to have the terms of the lease agreement specifically enforced upon re-tender of the rent due for 1973.

The Defendant has also contended that Plaintiff breached the lease by allowing the condition of the boat slips to deteriorate and fall into disrepair. The evidence on this point is in conflict, but I find no need to consider it in any detail since this was not relied upon by Rainbow Cove as a reason for termination at the time notice was given.

Plaintiff is directed to submit an order, on notice.