**In re TELEPHONE WAREHOUSE, INC., et al., Debtors.**

**Nextel Retail Stores, Inc., Appellant,**

v.

**The LTCW Trust, successor to the Debtors, Appellee.**

**No. 00–2105–00–2110–MFW. Civ.A. No. 02–1251–JJF.**

United States District Court, D. Delaware.

Feb. 2, 2004.

---

James L. Patton, Jr., Curtis J. Crowther, Matthew B. Lunn, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, of counsel: Fordham E. Huffman, Mary E. Tait, Jones, Day, Reavis & Pogue, Columbus, OH, for Appellant.

Jeffrey M. Schlerf, Christopher P. Simon, The Bayard Firm, Wilmington, DE,

of counsel: Glenn M. Kurtz, John K. Cunningham, James M. Ingoglia, White & Case LLP, New York City, and White & Case LLP, Miami, FL, for Appellee.

## *OPINION*

FARNAN, District Judge.

Pending before the Court is an appeal by Appellant Nextel Retail Stores, Inc. ("Nextel") from the Order of the United States Bankruptcy Court for the District of Delaware dated June 26, 2002, granting summary judgment in favor of Appellee, The LTCW Trust, the successor to the Debtors[1], in the adversary proceeding brought by Nextel against The LTCW Trust (the "Trust"). For the reasons discussed, the Court will reverse the decision of the Bankruptcy Court and remand this matter for further findings and/or proceedings consistent with this Opinion.

## I. The Parties' Contentions

The parties' dispute arises in connection with the sale by the Debtors of substantially all of their assets to Nextel. To accomplish this sale, the parties executed a number of agreements, including an Asset Purchase Agreement (A–1), a letter Agreement of February 1, 2001 (the Letter Agreement) (A–75), an Amended Letter Agreement (A–80) and an Escrow Agreement (A–65). Pursuant to the terms of the Escrow Agreement, $3,200,000.00 of the $32,000,000.00 deposited by Nextel was to be held by The Bank of New York, as the Escrow Agent, to ensure the Debtors' post-closing obligations. The Escrow Agreement provided that Nextel was to give notice to the Escrow Agent by the 90th day after Closing if it sought disbursements from the Remaining Escrow

---

[1]. The Debtors in this action included: Let's Talk Cellular & Wireless, Inc., Telephone Warehouse, Inc., Cellular Warehouse, Inc., Cellular USA, National Cellular Incorporated, and Sosebee Enterprise, Inc.

funds and to liquidate the amount of the disbursement within 120 days after Closing. (A–66, 67).

The Letter Agreement between the parties pertained to certain leases held by the Debtors. If the Debtors were not able to assign a lease to Nextel on the Closing Date along with an extension or renewal of at least one year, Nextel was entitled to recover $125,000 per lease from the remaining Escrow Funds. (A–75–77). Nextel was also entitled to recover certain rent increase adjustments from the remaining Escrow funds.

Shortly before Closing, it became apparent that the Debtors would not be able to satisfy their obligations with respect to the leases. As a result, the parties agreed by the Amended Letter Agreement, to give the Debtors an additional period of 90 days after the Closing, or up to and including July 30, 2001, to negotiate and assign the leases to Nextel. (A–80).

At the Closing, Nextel contends that it informed Charles Setzfand, a representative of the Trust, that it intended to make an immediate demand on the Escrow Agent for the disbursement of the Remaining Escrow Funds. (Aff. of Rand S. Bailin, ¶ 10(A–3)). According to Nextel, Mr. Setzfand indicated that he wanted to continue negotiating to arrange the lease extensions, and Mr. Setzfan asked Nextel to wait to make a demand for the disbursements. Nextel agreed to wait, and further negotiations between the parties continued. (Aff. of Rand Bailin, ¶ 10–12(A–3)).

By July 30, 2001, the Trust had still not delivered the leases, and the Trust contacted Nextel to request additional time to negotiate extensions of the remaining leases. (Aff. of Rand Bailin, ¶ 13(A–3)). Rather than formally extending the time for the Trust to perform, Nextel advised the Trust that it wanted to give notice to the Escrow Agent of a demand for distri-

bution in an indefinite amount. Nextel gave this notice to the Escrow Agent on July 31, 2001.

On August 23, 2001, the Trust made a demand on the Escrow Agent for disbursement of all the remaining escrow funds on the grounds that Nextel gave its notice to the Escrow Agent a day late, on the 91st day after Closing. (A–53–54). The Trust filed a lawsuit against the Escrow Agent, and Nextel intervened on the grounds that it opposed the disbursement and was entitled to $2.2 million in funds for the Trust's failure to perform its obligation to transfer all scheduled leases in accordance with the Asset Purchase Agreement.

By its appeal, Nextel contends that the Bankruptcy Court erred in granting summary judgment in favor of the Trust. Nextel contends that the Bankruptcy Court erred in concluding that it lacked the equitable power to avoid a forfeiture by Nextel as a result of its one-day delay in giving administrative notice to the Escrow Agent, particularly where that delay resulted in no disbursement, no reliance and no prejudice to either party. Nextel also contends that genuine issues of material fact precluded the Bankruptcy Court from granting summary judgment in favor of the Trust. Specifically, Nextel contends that factual issues exist as a result of: (1) inconsistencies in the notice provisions of the various relevant agreements, and (2) the conduct of the Trust following the alleged defective notice which suggests a waiver and/or acquiescence in the alleged defect. Nextel further contends that it was error for the Bankruptcy Court to enforce the Escrow Agreement in favor of the Trust where the Trust failed to perform its obligations under the Purchase Agreement and related Letter Agreements.

In response, the Trust contends that the Bankruptcy Court properly granted summary judgment because the provisions of the Escrow Agreements were clear and unambiguous, and Nextel failed to give the Escrow Agent timely notice. The Trust also contends that under the Letter Agreements, Nextel failed to timely exercise its option to exclude the leases, and therefore, Nextel could not seek the amount for the those leases from the Escrow Agent. The Trust also contends that the Bankruptcy Court correctly found that the Trust did not waive the notice provisions, because the relevant agreements require that waivers be in writing, and the Trust did not engage in any conduct inconsistent with the enforcement of its rights. The Trust further points out, that contrary to Nextel's assertions, the Trust did assign all of the leases at issue to Nextel, and such assignments were so ordered by the Bankruptcy Court. To the extent that Nextel contends that those leases did not have extensions, the Trust contends that they were not obligated by the Asset Purchase Agreement to obtain the extensions, and that it was the obligation of Nextel to exercise its 90 day option to exclude from the Asset Purchase Agreement any leases not extended. Thus, the Trust maintains that it performed its obligations and that Nextel did not exercise its option, and therefore, Nextel is not entitled to any disbursements of the Remaining Escrow Funds.

## II. Standard of Review

 The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

 After reviewing the decision of the Bankruptcy Court under a plenary standard of review, the Court concludes that the Bankruptcy Court erred in granting summary judgment in favor of the Trust and concluding that it lacked the equitable power to avoid working an unfair forfeiture on Nextel. The Bankruptcy Court is an equitable court and may apply equitable principles, when appropriate. Equity abhors a forfeiture, and courts "will disregard a forfeiture occasioned by a failure to comply with the very letter of an agreement when it has been substantially performed." *Jefferson Chem. Co. v. Mobay*, 267 A.2d 635, 637 (Del.Ch.1970). In this case, Nextel substantially performed its obligations under the parties' agreements and continually cooperated with the Trust by granting it additional time to perform its obligations under the agreements. The Trust presented no evidence that the one day delay caused it any prejudice, and the circumstances of this case suggest that Nextel worked cooperatively

and in good faith with the Trust in providing it several extensions to comply with its obligations. In these circumstances, the Court concludes that strict compliance with the terms of the Escrow Agreement was not necessarily required, and that the Bankruptcy Court should have considered the application of equitable principles to avoid effectuating a forfeiture on Nextel.

The Trust advances several cases to support its contention that escrow agreements should be strictly enforced. In the Court's view, however, those cases favor Nextel's position, because those courts looked to the purpose of the escrow agreement in determining whether the party seeking funds was entitled to them. For example, in *Commonwealth Land Title Insurance Co. v. 1616 Reminc Ltd. Partnership (In re 1616 Reminc Ltd. Partnership)*, 13 B.R. 948 (Bankr.E.D.Va.1981), the court concluded that the debtor was not entitled to recover the escrow funds, because the debtor failed to satisfy the performance obligations secured by the agreement. In this case, the Trust did not perform those obligations which were meant to be secured by the escrowed funds, and yet, it is the Trust who seeks disbursement of the funds. In such circumstances, the Court is not persuaded that strict compliance with the Escrow Agreement is necessarily required.

▬ In addition, the Trust contends that the parties' transaction is essentially an option, and options are strictly enforced regardless of whether such enforcement results in a forfeiture. The Court is not persuaded by the Trust's characterization of the transaction. Although an option involves a contract providing a party with "a 'choice' between alternatives," the use of alternatives in an agreement "is not a sufficient reason for calling the contract an 'Option Contract.'" 3 Eric Mills Holmes, *Corbin on Contracts* § 11.1 at 456–457.

Rather, an option is more precisely defined as

a unilateral contract in which the optionor agrees with the optionee that he has a right to buy the optionor's property according to the precise terms and conditions of the contract. It has also been defined as a continuing offer to sell which may not be revoked during the period fixed for its acceptance, if it is under seal or if the agreement fixing the time is supported by a valuable consideration.

*Abdallah v. Abdallah,* 359 F.2d 170, 173–174 (3d Cir.1966) (citations omitted). In the Court's view, the parties' transaction does not fall within the confines of this definition. The parties' transaction was a bilateral contract which involved a completed purchase and an actual sale, rather than a right to buy and continuing offer to sell. Thus, the Court agrees with Nextel that the Letter Agreements are more appropriately characterized as purchase price adjustments than option contracts.

▬ However, even if the Court concludes that the parties' transaction creates an option contract, the Court's conclusion that equitable principles may be applied to avoid a forfeiture would remain unchanged. Time is generally regarded to be "of the essence" in the case of option contracts, however, this is usually the case because, as Corbin explains, the time limits can usually be enforced without working a forfeiture:

Where a sale is, by agreement, to become absolute in absence of a notice to the contrary within a fixed period, the power of avoidance ends on the exact day. It is true that the option holder has paid a consideration for the optional power of acceptance (or else has a sealed promise or has detrimentally relied); but this consideration is usually comparatively small or money agreed

upon as the exchange for the power of acceptance for the specified time. When that time expires, the option equivalent of the price holder paid for the option; and *a refusal to give effect to an acceptance that is one minute late results in no forfeiture.* Corbin § 11.17 at 601, 605 (emphasis added). Further, Corbin recognizes that equitable relief is "available to an option holder who delays in giving seasonable notice due to an illness, misunderstanding or mistake, or forgetfulness, inadvertence or oversight, or honest belief that notice is not required," where the balance of the equities favor such relief. *Id.* at 606–609 (footnotes omitted). In making this assessment, a court should consider "the degree of the option holder's negligence, the length of the delay, the lack of substantial or unconscionable forfeiture, the parity of bargaining power, the clarity of the notice provision and other equities ..." *Id.* Because the Bankruptcy Court is not bound to strict compliance with the Escrow Agreement and may consider a balance of the equities in reaching its decision in this case, the Court concludes that the Bankruptcy Court's decision was erroneous.

Further, the Court finds that factual issues exist in the instant case making a remand appropriate. In addition to the factual record which may need to be developed to apply the equitable considerations outlined above, the Court further finds that development of the factual record may be required with respect to the parties' intentions in creating the agreements forming the basis of the transaction at issue. In reaching its conclusion in this matter, the Bankruptcy Court focused on the terms of the Escrow Agreement. However, the Escrow Agreement also implicates the Asset Purchase Agreement and the parties' Letter Agreements. *See e.g. Murphy v. Stowe Club Highlands,* 171 Vt. 144, 761 A.2d 688, 694 (2000) ("By its very nature, an escrow agreement is supplementary to another contract."); *Young v. Bishop,* 88 Ariz. 140, 353 P.2d 1017, 1021 (1960) ("[A]n escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties."). Indeed, the parties' transaction, taken as a whole encompasses all of these agreements, and it appears to the Court that there are several inconsistencies among the provisions of these agreements which may result in ambiguities requiring factual discovery. Accordingly, if the Bankruptcy Court finds it necessary to reach the contractual arguments of the parties, it may be necessary for the Bankruptcy Court to develop a factual record in this regard. Accordingly, the Court will reverse the decision of the Bankruptcy Court and remand this matter to the Bankruptcy Court for further findings and/or proceedings consistent with this Opinion.

## IV. CONCLUSION

For the reasons discussed, the Court will reverse the decision of the Bankruptcy Court dated June 26, 2002 and remand this matter for further findings and/or proceedings consistent with this Opinion.

An appropriate Order will be entered.

### *FINAL ORDER*

At Wilmington, this 2nd day of February 2004, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED THAT the June 26, 2002 Order of the Bankruptcy Court is REVERSED and this matter is REMANDED to the Bankruptcy Court for further proceedings consistent with the Court's Opinion.